Schwarz, Respondent, vs. Winter, Appellant.

*February 7—March 6, 1956.*

304

For the appellant there were briefs and oral argument by *Emmet Horan* of Milwaukee.

For the respondent there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Charles S. Quarles* and *James C. Mallien* of counsel, all of Milwaukee, and oral argument by *Mr. Charles S. Quarles* and *Mr. Mallien.*

MARTIN, J.    On May 16, 1952, plaintiff was seventy-seven years old, the owner and operator of a pharmacy in Milwaukee for many years. He testified that at noon on that day he left his store to go home for lunch and drove north on Lake drive, intending to deliver a prescription at a Sylvan court address on his way home. Looking for Sylvan court, he stopped at the east curb of Lake drive just south of or in the intersection of Lake drive and Sylvan; he determined that the intersecting street was Sylvan court, put on his left directional signal and proceeded to make a left turn

west across Lake drive. He looked to the north and saw defendant's car about a block or less away when he began his turn. When he reached the center lane of Lake drive, which is 40 feet wide, he "glanced up" and "it seemed" to him that defendant's car was then a good half block away and she was moving "pretty fast," although he had no opportunity to estimate how fast. He estimated that his own speed as he crossed the intersection was not more than 10 miles per hour. He figured he had plenty of time to get across. He testified:

"I saw her out of the side of my eye, and I kept going because she had plenty of room to get around behind me if she didn't want to shut down her speed."

Mrs. Winter, the defendant, testified that prior to the collision she was driving south on Lake drive at about 30 miles per hour. She first saw plaintiff's car when it was stopped at the east curb of Lake drive in the Sylvan court intersection. When she observed that he was proceeding very slowly from the east curb toward the center of the street she slowed down "to attempt to determine what he was going to do"—

". . . and then he appeared to stop at the center, at which point I assumed he was stopping his car to permit me to continue in my path of traveling south on Lake drive, and I then continued to go on."

She further testified that when she was 50 to 60 feet away he crossed the center line of the drive and she applied her brakes and turned her car to the right in the hope of avoiding a collision. In response to a question regarding her speed, she stated:

"Well I was originally traveling 30 miles an hour. I then slowed down to determine what Mr. Schwarz was doing when I concluded, when I assumed that he was stopping, I

then again put my foot back on the accelerator, so I would judge it was not over 30 miles an hour."

Before she applied her brakes she was about in the center of the west half of Lake drive. She saw no signal given by the plaintiff, "which was why I was so confused as to what he was attempting to do, what he was planning to do."

The automobiles collided in Sylvan court just west of the west curb of Lake drive, the plaintiff's car being struck at the right rear by defendant's left front fender. Mrs. Winter's car left skid marks 58 feet long.

Raymond Haas, a police officer off duty at the time of the accident, testified that he had traveled behind Mrs. Winter's car for about a mile before the collision occurred; he had driven 30 miles per hour and the distance between his car and hers remained at about 200 feet; when he was 300 feet from the intersection he observed plaintiff's car in the intersection beginning to turn toward the west on Sylvan "and it appeared to me that he just continued on through and completed his left turn at a speed of five miles an hour roughly"—

". . . the car appeared to be going so slowly at the first time that I saw it, that I don't think I would notice any alteration of speed, unless it came to a complete stop, and it did not come to a complete stop as far as I could see, but I would say it continued at about a very low rate of speed, five miles an hour or maybe even under."

The trial court found the plaintiff causally negligent in failing to maintain an efficient lookout. There is no question that the evidence supports such finding.

In its decision the court further stated:

"There is some question as to his making a proper left turn at the intersection, but it must be said that it was not a contributing factor. The Winter car was far enough away

to avoid a collision if brakes were properly applied and speed reduced."

That plaintiff violated sec. 85.17 (2), Stats., requiring that a left turn be made from the traffic lane immediately to the right of the center of the street, is an undisputed fact in this case.

Sec. 85.18, Stats., provides:

"(1) . . . .The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first-mentioned vehicle; provided, the driver of the vehicle turning left has given a plainly visible signal of intention to turn as aforesaid. . . .

"(5) The operator of a vehicle within an intersection intending to turn to the left across the path of any vehicle approaching from the opposite direction, may make such left turn where it is permitted only after affording a reasonable opportunity to the operator of such vehicle to avoid a collision."

These sections, giving a driver the right to turn left across the path of approaching vehicles, clearly contemplate a situation where he has entered the intersection in accordance with the requirements of sec. 85.17 (2), Stats. The plaintiff, making his turn toward the west from a parked position at the east curb within the intersection, acquired no right of way over the defendant; it was his duty under these circumstances to allow her to pass before crossing the west half of the street. It must be held as a matter of law that his violation of the statutes referred to had a causal connection with the collision which ensued.

It would appear from the memorandum decision that because the defendant could have stopped her car in the distance she was from the intersection at the time she saw

plaintiff turning left, the trial court concluded that any violation of the statute governing left turns could have no causal connection with the collision. We cannot agree with this view. The statute prescribes a specific pattern of operation by a driver who wants to make a left turn, so that other users of the highway may not be left in doubt as to his intentions and may control their vehicles accordingly. Any departure from such statutory requirements on the part of a left-turning driver places an additional burden on others to determine what his intentions are in preparing to meet the situation. That is what happened here. Mrs. Winter testified she was confused by the plaintiff's movements in the intersection. First she slowed down, thinking he might cross her path; then she picked up her speed when it appeared to her from his unusually slow pace that he was going to stop and let her by; finally his continued slow progress across the center of the street made it clear that he did not intend to stop.

While this does not excuse the defendant for proceeding into a situation which was admittedly confusing to her, it shows clearly the effect which plaintiff's disregard of the statutes had in contributing to the danger in which both drivers became involved.

The record raises the question whether plaintiff was not also negligent with respect to controlling his automobile. He testified:

"I saw her out of the side of my eye, and I kept going because she had plenty of room to get around behind me if she didn't want to shut down her speed."

His failure with respect to lookout was not so complete as necessarily to include any negligent operation. His testimony indicates that he decided to "keep going" even though he observed that the defendant was coming "pretty fast." The reasoning of the trial court in finding defendant guilty

of causal negligence with respect to management and control because she failed to stop her car would apply equally to the plaintiff. At his speed he could have stopped in his tracks, but chose instead to continue across her path and let her avoid him as she saw fit. We must hold plaintiff causally negligent as to management and control as a matter of law.

The combination of plaintiff's negligence as to lookout, management and control, and manner of turning left makes it necessary to hold as a matter of law that his negligence was at least as great as that of the defendant.

With respect to the gravity of a negligent left turn, the attitude of this court was plainly stated by Mr. Justice CURRIE in the recent case of *Guptill v. Roemer* (1955), 269 Wis. 12, 19, 68 N. W. (2d) 579, 69 N. W. (2d) 571, as follows:

"We might observe that the case at bar is one of three appeals decided by us on this assignment involving motor-vehicle-accident cases in which a driver attempted, as did plaintiff Guptill, to make a left turn in the path of an oncoming vehicle under circumstances where a collision was certain to ensue if the latter vehicle continued in its same lane of travel and at its same speed. It is difficult for us to understand how a conscientious jury under such circumstances could attribute the smaller percentage of negligence to the driver making the left turn whose act precipitated the situation resulting in the collision."

While we are ordinarily reluctant to change the apportionment made in the lower court, under the peculiar circumstances of this case where the evidence of the plaintiff's negligence is so clear and the quantum so great, we feel constrained to do so.

In view of our decision, it is unnecessary to consider the question raised by respondent's motion to review.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the plaintiff's complaint.