McCONVILLE, Appellant, v. STATE FARM MUTUAL AUTO-
MOBILE INSURANCE COMPANY and another, Respond-
ents.

*November 27, 1961—January 15, 1962.*

---

376

For the appellant there was a brief and oral argument by *Frank E. Huettner* of Cadott.

For the respondents there was a brief by *Stafford, Pfiffner & Stafford* of Chippewa Falls, and oral argument by *Robert F. Pfiffner*.

FAIRCHILD, J. The verdict in the instant case was rendered December 2, 1960. No objection was made to the submission of the issue of assumption of risk. On January 10, 1961, our decision and concurring opinions were announced in *Baird v. Cornelius.*[1] Two justices stated that acts of implied acquiescence of an automobile guest in the negligent acts of the host-driver, which evince a disregard by the guest for his safety, constitute negligence and properly should be subject to the comparative-negligence statute. Three other justices indicated that the question of assumption of risk should be re-examined.

Thereafter in the instant case motions after verdict, including a motion for a new trial in the interest of justice, were made by plaintiff, relying in part on the *Baird* opinions, and denied by the circuit court. Plaintiff claims here that he is entitled to a new trial on several grounds, but argues principally that he is entitled to a new trial in which the issue with respect to plaintiff's willingness to ride as Mrs. Licht's guest would be submitted in terms of negligence and not assumption of risk.

When certain relationships, founded on consent, exist between an actor and an injured party, the law has declined to impose liability on the actor for conduct which would constitute negligence but for the implication that the injured party has assumed the risk of the particular conduct. The implication has arisen from the injured party's willingness

---

[1] (1961), 12 Wis. (2d) 284, 297, 303, 107 N. W. (2d) 278.

to proceed in the face of a hazard to his safety, known and appreciated by him. One of the relationships in which the doctrine of assumption of risk has been applied is that between host and guest in an automobile.[2]

Whether the principle of assumption of risk be explained in terms of consent to receiving harm (actually consent only to being exposed to danger which one hopes will not materialize in harm) or in terms of a limitation on the duty of a host to a guest, the principle reflects a policy judgment that an automobile host should not be held to as high a standard of responsibility for injury to his guest as for injury to one not in that relationship. The principle represents an evaluation of the relationship itself, including a concept that the guest is in the automobile as a matter of grace, not right, that he is free to ride or not ride, and must protest or else be silent, at his own risk, and that the host as a benefactor of the guest merits protection from liability to one to whom the host has extended a favor.

This evaluation, this policy judgment, and these concepts do not appear sufficiently valid under present-day customs and community attitude toward the use of automobiles.

We therefore adopt the following rules of law: (1) The driver of an automobile owes his guest the same duty of ordinary care that he owes to others; (2) a guest's assumption of risk, heretofore implied from his willingness to proceed in the face of a known hazard is no longer a defense separate from contributory negligence; (3) if a guest's exposure of himself to a particular hazard be unreasonable and a failure to exercise ordinary care for his own safety, such conduct is negligence, and is subject to the comparative-negligence statute.

There may be circumstances where a guest's willingness to proceed in the face of a known hazard for which the host

[2] *Knipfer v. Shaw* (1933), 210 Wis. 617, 621, 246 N. W. 328, 247 N. W. 320.

is responsible is not unreasonable. In a particular situation the utility of riding with the host and the inadequacy of any alternative course may both be so obvious that the guest's acquiescence might constitute assumption of risk as heretofore existing, but not a lack of ordinary care. In such circumstances the guest's acquiescence will constitute no defense under the rule we are now adopting. We make the policy judgment, however, that much-more injustice will be avoided in the instances where acquiescence ceases to raise a complete defense and becomes a matter for comparison by the trier of the fact than will be created in the instances where the acquiescence is not unreasonable and therefore raises no defense at all under the principles of contributory and comparative negligence. Under the new rule, the trier of the fact may determine that a guest failed to exercise ordinary care in riding with a particular host with knowledge of the host's deficiencies in driving, but may also evaluate such failure in the light of all the circumstances and then compare it with the failures of the host which contribute to the injury.

In *O'Shea v. Lavoy*,[3] one of the earliest Wisconsin cases to apply the doctrine of assumption of risk in automobile host-guest cases, we held that the legal relation of licensor-licensee existed between the host and the guest. The court said, at page 462:

"According to those rules the guest accepts the premises of his host as he finds them, subject only to the limitation that the licensor must not set a trap or be guilty of active negligence which contributed to the injury. Here the accident happened, as said before, because of a broken spring, and the question is, Did that constitute a trap within the meaning of the rule? That is the only basis upon which liability can be predicated. A trap, within the meaning of this rule as we understand it, is a hidden danger lurking

[3] (1921), 175 Wis. 456, 185 N. W. 525.

upon the premises which may be avoided if known. Hence it is the duty of the host to advise his guest of its presence so that the guest may enjoy the premises in a security equal to that enjoyed by the host. The guest has no right to a greater security than that enjoyed by the host or other members of his family. The host simply places the premises which he has to offer at the disposal and enjoyment of his guest upon equal terms of security."

The court also stated, at page 459:

"It is an act of kindness and consideration for the owner of a car to lend its comfort and pleasure through an invitation extended to his less-fortunate neighbor for a ride in the country, to join a picnic party, or to enjoy an evening at the theater in the nearby city. This is a species of hospitality which should be encouraged rather than discouraged, and the law should not couple with this friendly act a duty which makes its exercise an unreasonable hazard."

In *Cleary v. Eckart* [4] the doctrine of assumption of risk was expanded to include the skill and judgment of the driver. We held that the guest has no right to demand of the host a degree of skill which the host is unable to exercise. This perforce was a holding that the host owes no duty to the guest to exercise more skill than he possesses. In that opinion we noted, at page 119:

"It would be interesting to inquire whether under such circumstances the guest should not be held to have accepted the risk incident to the situation, but we think the case may well be disposed of on the ground that plaintiff accepted such hospitality as the host had to offer, . . ."

This doctrine was further expanded in *Olson v. Hermansen* [5] which held the guest assumes the dangers incident to the known habits of the driver, as well as the driver's proficiency.

---

[4] (1926), 191 Wis. 114, 210 N. W. 267.
[5] (1928), 196 Wis. 614, 220 N. W. 203.

In *Howe v. Corey* [6] decided prior to *O'Shea v. Lavoy, supra,* footnote 3, we held, at page 542:

"To permit Corey to proceed in this reckless manner without remonstrance, in the light of plaintiff's knowledge of the probable dangers at the Soo crossing, amounts to acquiescence in Corey's conduct and an assumption of the hazards and dangers incident thereto. It is wholly inconsistent with the idea that he exercised such reasonable care as the ordinarily prudent person exercises under like or similar circumstances. There is but one inference permissible to be drawn from the facts shown by the evidence, namely, that plaintiff was guilty of a want of ordinary care on the occasion in question and that such want of care contributed to produce the injury complained of."

In that case acquiescence in the active negligence of the defendant was held to constitute an assumption of risk, and contributory negligence. Because contributory negligence was at that time a complete defense, the court refused to consider further other aspects of the liability of an automobile host to his guest arising out of acquiescence. In *Sommerfield v. Flury* [7] it became clear that where the guest acquiesced without protest in the active negligence of the host, the defense of assumption of risk was available, and consisted of a further limitation of the duty owed by the host to the guest.

The court said, at page 169:

"This is the duty which the driver of a car owes to its occupants under our present decisions."

The court also stated, at page 170:

"Apparently the trial court did not appreciate the difference between the duty which Krueger owed to other users of the highway and the duty which he owed to the occupants of the car. The verdict as submitted inquired only

---

[6] (1920), 172 Wis. 537, 179 N. W. 791.
[7] (1929), 198 Wis. 163, 223 N. W. 408.

with reference to such matters as constituted negligence on the part of Krueger to third persons using the highway. The verdict did not adequately ascertain whether Krueger had breached the duty which he owed to the occupants of the car."

The court further stated, at page 171:

"The court told the jury that the fact that they were going to a fire could not affect the situation at all; that Krueger had no right to drive faster because he was going to a fire than he had if he was going on another errand. This would have been true so far as other users of the highway were concerned, but it was not necessarily true with reference to the occupants of the car if it was their common desire to hurry to the fire. So far as they were concerned, Krueger incurred no liability to them in driving at any rate of speed in which they might acquiesce."

We feel that the limitation on the duty of the automobile host under these, and other decisions, is no longer consistent with sound policy. A driver of an automobile should be held to the full standard of duty of ordinary care to his guests, as he is to other users of the highways. The analogy to the licensor-licensee relationship, which doctrine limits the liability of the possessor of land to a licensee,[8] may have been validly applied to the relationship of automobile host-guest in 1921 when *O'Shea v. Lavoy, supra*, footnote 3, was decided. Forty years ago automobiles were fewer; they were incapable of great speed, and automobile accidents caused by a defective vehicle, an inexperienced driver, or an unsafe course of driving were less frequent and probably had less-disastrous results. The serious consequences following automobile accidents today are well known. Modern, highly powered vehicles, with the ability to perform at great speeds, are capable of inflicting vast destruction and per-

---

[8] See Restatement, 2 Torts, p. 927 *et seq.*, secs. 340–342.

sonal injury. In view of the seriousness of many injuries, and the burdens falling upon the community as well as the individuals and families affected, it is doubtful whether the type of consent or acquiescence to danger, heretofore called assumption of risk, should be permitted to cut off completely the right to recover damages. It seems to us that the standard of care owed by the host to the automobile guest should be the same duty of ordinary care as is owed by any driver to other members of the community.

In *O'Shea v. Lavoy, supra,* footnote 3, the doctrine of limited liability seems to have been developed in sympathy for the host who had extended his hospitality to another. At that time it was evidently considered unfair to impose upon the individual host the burden of the injuries to the gratuitous guest. Liability insurance is widely prevalent today. In few cases will the new rule shift the burden of loss from the injured guest to the negligent host personally. In the great majority of cases it will shift part or all the burden of loss from the injured individual to the motoring public. The policy concept that it is unfair to shift the burden from the injured person to his host where the injured person knowingly and voluntarily exposed himself to dangers created by the host is no longer applicable.

The state licenses motor vehicle operators in the public interest.[9] An applicant must satisfy an examiner of his ability to read and understand highway signs, his knowledge of traffic laws, and demonstrate his ability to exercise ordinary and reasonable control of a motor vehicle.[10] These requirements evince a legislative policy to impose the same minimum standards of operation of automobiles upon all drivers.

---

[9] See ch. 343, Stats.
[10] Sec. 343.16 (1), Stats.

It has been suggested that the doctrine of assumption of risk is one of implied consent where the guest has acquiesced in a course of negligent driving.[11]

Consent seems not to be a satisfactory basis for retaining the doctrine of assumption of risk. The consequences of an automobile accident to a guest may be so disastrous that it would be contrary to public policy to hold that an individual who consents by implication to a dangerous situation will go uncompensated for his injuries.[12]

Conduct which has heretofore been denominated assumption of risk may constitute contributory negligence as well. The unreasonable assumption of risk constitutes negligence.[13] In the present case the jury should have been asked whether McConville was negligent for his own safety in riding with Mrs. Licht.

Illustrations of unjust results stemming from the old rule of assumption of risk are pointed out in the concurring opinion of Mr. Justice CURRIE and the writer in *Baird v. Cornelius, supra,* footnote 1. Defense counsel calls attention to the so-called guest statutes in many other states, denying recovery to a guest unless the host is guilty of something more than ordinary negligence. He correctly states that the passage of such statutes is a step in the opposite direction from the one we are now taking. Suffice it to say that the Wisconsin legislature has never made the policy judgment made by the legislatures of these other states in adopting such statutes, and we ourselves would not make such policy judgment. We are of the opinion that the new rule an-

[11] See Campbell, Host-Guest Rules in Wisconsin, 1943 Wisconsin Law Review, 180, 192.

[12] See *Metz v. Medford Fur Foods* (1958), 4 Wis. (2d) 96, 90 N. W. (2d) 106.

[13] *Scory v. LaFave* (1934), 215 Wis. 21, 254 N. W. 643; *Meyer v. Val-Lo-Will Farms* (1961), 14 Wis. (2d) 616, 111 N. W. (2d) 500.

nounced herein is more in harmony with the principle of comparative negligence adopted by our legislature than was the former rule.

Counsel does point out one matter which will require care and attention in framing a verdict under some situations.[14] Active negligence of a guest may be a cause of the collision and consequently a cause of his injuries. In the instant case, for instance, McConville's inadequate lookout, and presumably his failure to warn Mrs. Licht, were found by the jury to be a cause of the collision. A guest's negligence in riding with a host-driver whose known habits or lack of skill present a hazard would not be a cause of a collision, but would be a cause of the guest's injury resulting from that hazard. Here the second driver, Mr. Peterson, has been eliminated from the case, and if McConville should be found causally negligent as to lookout and as to riding with Mrs. Licht, both types of negligence should be taken together and compared with Mrs. Licht's causal negligence. If there were still an issue with respect to negligence of a second driver causing the collision, and if there were claims of one driver against the other for damages, it would be necessary to have more than one comparison question. The guest's negligence with respect to riding with the host would affect the guest's right to recover from the host or the other driver or both, and would enter into the comparison of the guest's causal negligence with that of each driver but would be immaterial with respect to the right of one driver to recover from the other.

Defense counsel argues that the facts of the instant case were such that McConville's causal negligence with respect to riding with Mrs. Licht equals or exceeds her negligence as a matter of law. We do not agree. Although there was evidence that Mrs. Licht had drunk a number of glasses of

---

[14] See discussion in Note, 1961 Wisconsin Law Review, 677.

beer, if not whiskey, and that McConville saw her or was with her from time to time in a small group of patrons in the tavern, there was no testimony by anyone who saw them before or after the collision that Mrs. Licht appeared to be under the influence of intoxicants. A jury might well find McConville negligent for his own safety in riding with Mrs. Licht, just as the first jury found he assumed the risk. Although the evidence would probably support a finding attributing 50 per cent of the total negligence to McConville, it would not compel such a finding as a matter of law.

No attack is made upon the finding that Peterson was not negligent, and there need be no new trial of that issue. Counsel for McConville argues that the damages awarded were inadequate. Whether or not inadequate, they were low, and the new trial should extend to all issues between McConville, Mrs. Licht and her insurer.

*By the Court.*—The portion of the judgment dismissing the complaint and awarding costs against plaintiff is reversed, and the cause remanded for a new trial. In other respects, the judgment is affirmed.

GORDON, J., took no part.