MURRAY, Respondent, v. REIDY and another, Appellants.

*October 3—October 29, 1963.*

For the appellants there was a brief and oral argument by *Stanley F. Schellinger,* attorney, and *James G. Doyle* of counsel, both of Milwaukee.

For the respondent there was a brief by *J. Jerome Finn,* attorney, and *Roland J. Weber* of counsel, both of Milwaukee, and oral argument by *Mr. Finn.*

WILKIE, J.    Appellants contend that the plaintiff was guilty of causal contributory negligence as a matter of law and ask for a new trial on the issues of negligence.

There are two issues raised on this appeal.  They are:

1. Was the plaintiff contributorily negligent as a matter of law because she entered an automobile driven by a person who had consumed, during a period of approximately seven hours, approximately four mixed drinks, eight glasses of beer, and two bottles of beer?

2. Was the plaintiff contributorily negligent as a matter of law because during the course of her ride she momentarily embraced her fiance, thus taking her eyes from the road?

As to the first issue, we are convinced that a proper jury question was presented both as to the quantity of intoxicating beverages consumed by the defendant driver during the period of approximately seven hours that he was with the plaintiff prior to the collision, as to the effect of such drinks

on the driving ability of the defendant, and as to the negligence, if any, on the part of the plaintiff in entering the automobile and proceeding as she did under the circumstances.

At about 7:30 p. m. on November 14th, Elizabeth Murray went into Tess' Tavern with her mother. There she met the defendant and Harold Bresnahan, who, at that time, was her fiance. They talked and during this time Donald Reidy drank approximately three 10-ounce glasses of beer. After an hour of conversation and drinking, Bresnahan, Reidy, and Miss Murray decided to go out on the town for the evening, and in the defendant's car they returned to Miss Murray's home to give her an opportunity to change clothes. While in Miss Murray's home, the defendant Reidy drank one bottle of beer.

The parties then traveled to Tessler's Tavern and while there, the defendant drank approximately five eight-ounce glasses of beer. Miss Murray and Bresnahan danced together briefly, but when the ballroom became too crowded, the threesome moved on to Krober's Tavern on Milwaukee's south side. This place also was extremely crowded, and after each one had consumed one bottle of beer, they moved on to the Elbow Room in downtown Milwaukee. Here the defendant had two mixed drinks.

At about 1:30 a. m. the trio left the Elbow Room and went to Mortell's, a tavern on Milwaukee's east side. While watching the entertainment at Mortell's, defendant drank two more mixed drinks. The party left Mortell's about 3:30 a. m. in search of a place to eat.

Defendant was operating his car in an easterly direction on West Wells street. From North Seventh street, West Wells is upgraded to the west. At the bottom of this grade, another automobile was stopped at the intersection of North Seventh and West Wells, waiting for a change in the traffic signal. The defendant's automobile came down the grade

and struck the rear end of the parked car. The defendant testified that he did not see the parked automobile until he was 10 feet from it. He was going 20-25 miles per hour just before the collision.

The contention is that in view of the prolonged drinking period prior to the collision and the circumstances of the accident, only one conclusion can be reached: That the drinking had dulled the driving ability of the host-driver so as to increase the danger to the plaintiff when she voluntarily entered the car knowing of his condition and knowing that this would increase the danger to her, and further that since she knew and acquiesced in such conduct she must be found contributorily negligent as a matter of law.

To deem a person negligent as a matter of law, we must conclude that his conduct under the circumstances always creates an unreasonable risk of harm, either to himself or to others. [1]

Under the facts of this case, we cannot hold that a person who conducted herself as Miss Murray did always creates an unreasonable risk of harm to herself. Since *McConville v. State Farm Mutual,* [2] and *Theisen, supra,* we have held that an automobile passenger's contribution to his injuries arising out of an accident must be evaluated in terms of the ordinary principles of negligence rather than under the label of "assumption of risk." A passenger in an automobile has the general duty to use due care under the circumstances to avoid injury to himself. We have also held in *Theisen,* that a passenger who encounters a known hazard upon entering

---

[1] *Theisen v. Milwaukee Automobile Mut. Ins. Co.* (1962), 18 Wis. (2d) 91, 98, 118 N. W. (2d) 140, in which we held, for example: ". . . we . . . hold that falling asleep at the wheel is negligence as a matter of law because no facts can exist which will justify, excuse, or exculpate such negligence."

[2] *McConville v. State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. (2d) 374, 113 N. W. (2d) 14.

an automobile may be deemed to be contributorily negligent by the trier of fact.

However, we cannot conclude that, as a matter of law, a person who enters an automobile driven by a person who consumed the amount of liquor that the defendant did in this case, is always creating an unreasonable risk of harm to himself.

The testimony reveals that Reidy showed no overt signs of intoxication prior to the collision. After the collision, the investigating police officer, who testified that he had had considerable experience dealing with intoxicated drivers, concluded upon examining Reidy that he was not under the influence of liquor. Reidy was never asked to take a sobriety test or to consent to a urine analysis. If an experienced police officer could not detect signs of intoxication, it is improbable that Miss Murray was able to determine that the defendant's driving skills were impaired by liquor.

In the absence of undisputed evidence that the driver had manifested symptoms of being under the influence of liquor which adversely affected his driving ability, it cannot be held as a matter of law that the passenger has proceeded in the face of a known danger and, therefore, has failed to exercise due care for his own safety. The record here does not show any impairment of his driving ability brought on by the drinking, or any knowledge on her part of any adverse effect of the drinking on his driving ability.

As to the second issue, we are equally convinced that a proper jury question was presented as to the negligent lookout, if any, on the part of the plaintiff.

In *Theisen, supra,* we held that a passenger's general duty of reasonable care for his own safety includes an obligation to maintain a reasonable lookout.[3]

[3] *Giemza v. Allied American Mut. Fire Ins. Co.* (1960), 10 Wis. (2d) 555, 103 N. W. (2d) 538. *Teas v. Eisenlord* (1934), 215 Wis. 455, 253 N. W. 795.

Mr. Bresnahan testified that shortly before the impact he had been "necking" with Miss Murray, who was the middle passenger in the front seat with Mr. Bresnahan on the outside. The record is barren of any further details either as to what was meant by the term "necking" or as to how long this sort of behavior had been going on. Miss Murray did not testify to any such diversion, nor did the defendant. Everyone concedes that no passenger saw the parked car just ahead or warned the driver of its presence.

On this record we cannot conclude that as a matter of law Miss Murray failed to exercise the duty of due care that she owed as to lookout. In the absence of any amplifying details we must conclude that the "necking" was only a momentary diversion that could not, as a matter of law, make her guilty of contributory negligence.

We are satisfied that the jury could find no negligence on the part of the plaintiff in either respect raised by appellants and that there was no contributory negligence as a matter of law.

*By the Court.*—Judgment affirmed.