St. Paul Fire & Marine Insurance Company, Plaintiff and Respondent, v. Burchard, Defendant: Badger Mutual Insurance Company, Defendant and Appellant.

Kiefer, Plaintiff and Respondent, v. Same, Defendant: Same, Defendant and Appellant.

*September 29—October 27, 1964.*

For the appellant there were briefs by *Roberts, Boardman, Suhr & Curry,* and oral argument by *Henry A. Field, Jr.,* all of Madison.

For the respondents there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll E. Metzner.*

WILKIE, J.  Four issues are presented on this appeal:

1. *Was there credible evidence to support the jury finding that LaVerne Kiefer was not negligent?*

2. *Did remarks made by Burchard's counsel during his closing argument constitute reversible error?*

3. *Did the trial court err in submitting special-verdict questions?*

4. *Did the trial court err in denying Badger Mutual's motion for a separate trial on the question of its policy defense?*

### Guest's Negligence.

As to the first issue, appellant contends that Kiefer was negligent as a matter of law in riding with a driver who had been drinking, in respect to lookout, and in his failure to warn or object. A jury verdict will not be upset if there is any credible evidence which, under any reasonable view, fairly admits of an inference supporting the finding.[1] Evidence is to be viewed in the light most favorable to support the verdict.[2] A guest must exercise ordinary care for his own safety.[3] A guest who has indulged in intoxicants is held to exactly the same standard of care.[4] As Kiefer's actions must constitute negligence as a matter of law to upset the verdict, his conduct under the circumstances must always create an unreasonable risk of harm to himself.[5]

First considering Kiefer's alleged negligence in riding with a driver who had been drinking, we believe that the circumstances in this case are quite similar to those in the recent case of *Murray v. Reidy,*[6] where the court said:

[1] *Rodenkirch v. Johnson* (1960), 9 Wis. (2d) 245, 101 N. W. (2d) 83; *Maccaux v. Princl* (1958), 3 Wis. (2d) 44, 87 N. W. (2d) 772.

[2] *Rodenkirch, supra,* footnote 1; *Ruid v. Davis* (1959), 8 Wis. (2d) 288, 99 N. W. (2d) 129.

[3] *Theisen v. Milwaukee Automobile Mut. Ins. Co.* (1962), 18 Wis. (2d) 91, 118 N. W. (2d) 140, 119 N. W. (2d) 393; *McConville v. State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. (2d) 374, 113 N. W. (2d) 14.

[4] *Watland v. Farmers Mut. Automobile Ins. Co.* (1952), 261 Wis. 477, 53 N. W. (2d) 193.

[5] *Murray v. Reidy* (1963), 21 Wis. (2d) 254, 124 N. W. (2d) 120.

[6] *Supra,* 21 Wis. (2d) at page 258, 124 N. W. (2d) at page 122, footnote 5.

"In the absence of undisputed evidence that the driver had manifested symptoms of being under the influence of liquor which adversely affected his driving ability, it cannot be held as a matter of law that the passenger has proceeded in the face of a known danger and, therefore, has failed to exercise due care for his own safety."

The accident occurred shortly before 6 a. m. Burchard had had at least ten drinks since early the previous afternoon but had not imbibed after the bars closed at 2 a. m. He ate a snack early in the evening. Car trouble had forced him to walk three blocks in the rain. Mrs. Hunt lent her car with no qualms. Neither she nor any of the others on the boat testified that Burchard's actions appeared impaired by the alcohol. The police, of course, smelled liquor on his breath. This they could have done even if he had consumed only a single drink. There is no evidence in the record which would indicate that alcohol affected Burchard.

Although a passenger who encounters a known hazard upon entering an automobile may be negligent,[7] we cannot say that, as a matter of law, Kiefer failed to exercise reasonable care for his own safety in merely riding with Burchard after the latter had been drinking.

As to Kiefer's alleged negligence as to lookout it is, of course, the rule that a passenger is obligated to keep a reasonable lookout.[8] However, the record is barren of any evidence which indicates that Kiefer was derelict in his duty as to lookout.

A passenger is also bound to exercise reasonable care to warn his driver of approaching danger.[9] Burchard testified that he was traveling between 40 and 45 miles an hour. Appellant asserts that the physical evidence conclusively in-

---

[7] *McConville v. State Farm Mut. Automobile Ins. Co., supra,* footnote 3.

[8] *Murray v. Reidy, supra,* footnote 5, and *Theisen v. Milwaukee Automobile Mut. Ins. Co., supra,* footnote 3.

[9] *Teas v. Eisenlord* (1934), 215 Wis. 455, 253 N. W. 795.

dicates that Burchard's speed was much greater and that Kiefer was therefore negligent in failing to warn Burchard of the upcoming curve. Appellant emphasizes the 96-foot skid marks, the displacement of an embedded boulder (about 3½ to 4 feet wide, 3 feet thick and 4 feet from top to bottom), the sound of the impact, the fact that the windshield was thrown 30 feet, and photographs of the wreck.

This evidence is entirely consistent with Burchard's claim that he was going 40 to 45 miles an hour as he came to the curve. No part of this evidence supports the proposition that as a matter of law his speed was greater. The heavy Chrysler, starting to skid on the wet blacktop, skidded more or less sideways for 96 feet and would have gone farther had it not met stern resistance from the boulder and then the tree. Even on dry pavement it takes 149 feet to brake to a stop from 40 miles an hour.[10] The length of the skid marks does not conclusively show speed in excess of 40 miles an hour. The noise of the crash, the dislodging of the rock, the displaced windshield, and the photographs of the demolished car, all point to a forceful impact but, especially considering how heavy the car was, these physical facts are inconclusive and will not upset the jury's findings based on other evidence.[11] It is argued that even conceding that the speed was only 40 to 45 miles per hour, Kiefer still had a duty to warn the driver of the upcoming curve. The important fact remains that the curve was unmarked and there is no evidence to show that Kiefer was aware of the danger. The trial judge stated:

". . . I don't believe that I can hold as a matter of law that a guest in the right rear seat is under duty to criticize and direct the driver to desist from a speed of 40 miles an

[10] Wisconsin's Manual for Motorists (rev. ed. January, 1963).
[11] *Pagel v. Holewinski* (1960), 11 Wis. (2d) 634, 106 N. W. (2d) 425; *New Amsterdam Casualty Co. v. Farmers Mut. Automobile Ins. Co.* (1959), 5 Wis. (2d) 646, 94 N. W. (2d) 175.

hour in a 25 miles an hour zone in the city at that hour of the morning when it was perfectly obvious and the testimony shows that there was utterly no traffic at all, . . ."

Our conclusion is that there is credible evidence to support the finding of the jury. Kiefer's conduct, under the circumstances, would not always create an unreasonable risk of harm to himself, and it cannot be said as a matter of law that he was negligent.

### Prejudicial Argument by Counsel.

Burchard's counsel, in his final argument, said:

"I say that is my only purpose here representing Mr. Burchard to try to help you arrive at an opinion that there were no limitations, and that the insurance carrier cannot crawl out of this by trying to make you believe that there are no limitations."

Appellant contends that because this remark informed the jury of the effect of their answer it constitutes reversible error.[12] The trial judge struck the word "crawl" but otherwise let the remark stand without instruction. The jury question on this particular issue inquired whether Burchard had permission to use the car. The jury found that he had.

At best the statement is confusing. Counsel told the jury that "the insurance carrier cannot crawl out of this by trying to make you believe that there are no limitations." The position of the insurance company was actually just the contrary. The company wanted the jury to find a limitation. Because of the phrasing, had the jury been swayed by the remark, the result would have been favorable to the insurance company.

---

[12] Relying on *Erb v. Mutual Service Casualty Co.* (1963), 20 Wis. (2d) 530, 123 N. W. (2d) 493.

The issue which was commented upon was put to the jury as follows:

"At the time and place of the accident was the defendant, Gerald C. Burchard, operating the 1959 Chrysler with the permission of the owner, Mrs. Lois Hunt?"

The question was not even couched in terms of a limitation. Therefore, the jury could not have learned the effect of their answer to that question on the ultimate verdict in the case.

### Special-Verdict Questions.

As to Burchard's authority to use Mrs. Hunt's car, the trial court rejected the following questions requested by Badger Mutual:

"Did Lois Hunt place a limitation on the use of her vehicle by Gerald Burchard?

"If you answer yes to question No. 6, then answer the following question. Did Gerald Burchard exceed or violate that limitation?"

Sec. 270.27, Stats., gives the trial court discretion in submitting special-verdict questions. There was no doubt that Burchard had permission to borrow Mrs. Hunt's car. It was not clear, however, whether a time limitation had been put on the use of the car. Mrs. Hunt testified that she told Burchard to have it back "within at least a half hour." Another witness said that Burchard was instructed to "bring the car right back." Burchard recalled no limitations. In any event, the accident happened within a half hour of the time Burchard took the car and therefore any question couched in terms of whether the limitation was observed would be completely unsupported by the record.

As to Kiefer's negligence, the court submitted the following question:

"Did LaVerne Kiefer fail to exercise ordinary care for his own safety?"

Appellant requested a question with a breakdown as to riding with Burchard, protestation, lookout, and failure to warn. The trial court properly used discretion, granted to it under sec. 270.27, Stats., in submitting the question in the omnibus form rather than as requested.

### Denial of Separate Trial.

The trial court has wide discretion in determining whether a separate trial should be ordered on a coverage question where an insurer has been made a party to a lawsuit under sec. 260.11, Stats.[13] Although in *Charneski*[14] this court recommended that the procedure of a separate trial be used more frequently, no mandate has been given that trial judges must grant a motion for a separate trial in every case and there was no abuse of discretion by the trial court in deciding that the interests of the parties and the public were better served in the case at bar by disposing of all issues in one trial.

*By the Court.*—Judgment affirmed.

[13] *Allstate Ins. Co. v. Charneski* (1962), 16 Wis. (2d) 325, 114 N. W. (2d) 489; *New Amsterdam Casualty Co. v. Farmers Mut. Automobile Ins. Co., supra,* footnote 11; *Ritterbusch v. Sexmith* (1950), 256 Wis. 507, 41 N. W. (2d) 611.

[14] *Supra,* footnote 13.