DELANEY, Respondent, v. PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant.

*November 30, 1965—January 4, 1966.*

346

348

For the appellant there was a brief and oral argument by *Hubert V. Fuller* of La Crosse.

For the respondent there was a brief and oral argument by *Ingolf E. Rasmus* of Chippewa Falls.

WILKIE, J. This case is controlled by sec. 209.06 (1), Stats.,[2] which has been interpreted to mean that there are three alternative grounds for avoiding such a policy:

[2] "209.06 INSURANCE; APPLICATION; EFFECT. (1) No oral or written statement, representation or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, unless such statement, representation or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss."

"(1) If the statement was false and made with intent to deceive; (2) if the statement increased the risk; or (3) if the statement contributed to the loss." [3]

In the instant case there was no contention that the respondent's statements contributed to the loss.

The principal issue presented on this appeal is whether there was credible evidence to support the jury verdict that there was no increase in the risk resulting from any false statements made by Mrs. Delaney in her application. To resolve this issue we must judge the jury verdict in the light of the familiar rules that (1) a jury verdict will not be upset if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings,[4] (2) this is particularly true when the verdict has the blessing of the trial court,[5] and (3) the evidence is to be viewed in the light most favorable to the verdict.[6]

We are satisfied that the failure of the respondent to disclose her hospitalizations in January, 1961, relating to angina pectoris, in September, 1958, relating to asthma, and in February, 1958, relating to nervous tension (tachycardia), was a misrepresentation which, under the facts of this case, as a matter of law, increased the risk and therefore voided the policy. We are also satisfied that

[3] *Polar Mfg. Co. v. Integrity Mut. Ins. Co.* (1959), 7 Wis. (2d) 443, 447, 96 N. W. (2d) 822. See also *Langlois v. Wisconsin National Life Ins. Co.* (1963), 19 Wis. (2d) 151, 119 N. W. (2d) 400, 120 N. W. (2d) 884; *Stockinger v. Central National Ins. Co.* (1964), 24 Wis. (2d) 245, 128 N. W. (2d) 433.

[4] *Zweifel v. Milwaukee Automobile Mut. Ins. Co.* (1965), 28 Wis. (2d) 249, 137 N. W. (2d) 6; *St. Paul Fire & Marine Ins. Co. v. Burchard* (1964), 25 Wis. (2d) 288, 130 N. W. (2d) 866.

[5] *Metcalf v. Consolidated Badger Co-operative* (1965), 28 Wis. (2d) 552, 137 N. W. (2d) 457; *Erdmann v. Milwaukee Automobile Mut. Ins. Co.* (1963), 20 Wis. (2d) 439, 122 N. W. (2d) 430.

[6] *Brunette v. Dade* (1964), 25 Wis. (2d) 617, 131 N. W. (2d) 340; *St. Paul Fire & Marine Ins. Co. v. Burchard, supra,* footnote 4.

her failure to disclose her eight hospitalizations (excluding from the 14 hospitalizations the two reported on the application and four others—two for childbirth, one for abdominal infection which developed as a result of the birth of the first daughter, and one for an infected toenail) was a misrepresentation which, under the facts of this case, as a matter of law, increased the risk and also voided the policy.

Three earlier cases are directly in point: *Demirjian v. New York Life Ins. Co.,*[7] *McGowan v. Supreme Court of Independent Order of Foresters*[8] and *Peterson v. Independent Order of Foresters.*[9] In *Demirjian,* the jury found that the applicant had made false statements that "(1) the insured had not had or consulted a physician for any disease of the stomach; (2) had never consulted a physician for any ailment; (3) had never consulted or been examined or treated by any physician for five years prior to his application."[10] Although the jury also found that "the insured suffered from ulcers of the stomach during April and May next prior to his application, . . . this ailment did not increase the risk . . . ."[11] On appeal this court let stand the jury's verdict that the statements of the applicant, though false, were made without intent to deceive. This court, however, did hold that the jury's finding that the ulcers did not increase the risk was in error and that the risk was increased as a matter of law. In *McGowan,* this court held that "[a]ll of the questions as to the health . . . of the ancestors or brothers and sisters" of the applicant "were material to the risk as a matter of law."[12] In *Peterson,* because

---

[7] (1931), 205 Wis. 71, 236 N. W. 566.

[8] (1899), 104 Wis. 173, 80 N. W. 603.

[9] (1916), 162 Wis. 562, 156 N. W. 951.

[10] *Demirjian v. New York Life Ins. Co., supra,* footnote 7, at page 72.

[11] Ibid.

[12] *McGowan v. Supreme Court of Independent Order of Foresters, supra,* footnote 8, at page 183.

the applicant admittedly had been treated by a physician within five years of the application for contusion of the chest, laceration of the leg, the trial court voided the policy, holding that the applicant's representation to the effect that he had suffered no injuries within the last five years was "necessarily material to the risk." [13]

In each of these cases there was a misrepresentation that increased the risk: The failure to give information about the applicant's ulcers in *Demirjian;* the failure to give health information about close ancestors in *McGowan;* and the failure to report the leg injury which had to be treated, in *Peterson.* So here, the applicant failed to report hospitalizations concerning heart trouble, asthma, and tachycardia, and at least five other important hospitalizations. And, crucially, there was uncontradicted testimony by appellant's witnesses that these misrepresentations increased the risk. Without competing testimony to bring about a jury question, we hold that such evidence increased the risk as a matter of law, thus voiding the policy.

In an attempt to raise a jury question, respondent, relying on the testimony of her physician, Dr. Henske, that since none of her conditions was actually serious and since she was in good health in 1963, argues that the jury could have inferred that the policy would have been issued even if all her hospitalizations were known. In the absence of qualified testimony to the effect that persons engaged in the same type of insurance business, acting reasonably and naturally in accordance with the practice usual in the insurance industry,[14] would have issued the policy even in the face of these misrepresentations, there is no basis for drawing any such inference and no jury question is presented. Moreover, this argument ignores

[13] *Peterson v. Independent Order of Foresters, supra,* footnote 9, at page 564.

[14] Wis J I—Civil, Part II, 3110; *Polar Mfg. Co. v. Integrity Mut. Ins. Co.* (1960), 11 Wis. (2d) 105, 109, 110, 104 N. W. (2d) 164.

the testimony (also uncontradicted) of appellant's underwriting and medical personnel that the fact that she was confined 14 times—regardless of the nature of her ailments—would be enough to cause the application to be rejected on the basis that she was either hospital prone or a hypochondriac.

Since the policy is voided as a matter of law because there were misrepresentations that increased the risk, it is unnecessary to consider whether, as a matter of law, the respondent made false statements with intent to deceive. No intent to deceive need be shown where there is a misrepresentation that increases the risk.[15]

*By the Court.*—Judgment reversed.

GORDON and BEILFUSS, JJ. (*dissenting*). We respectfully dissent. The agents of the Prudential Insurance Company of America persuaded Mrs. Delaney to forsake her pre-existing Blue Cross hospital policy and to "switch" to a policy with their company. One of the salesmen wrote out the application in which Mrs. Delaney disclosed two past hospitalizations. She was not told how far back she was to go in giving her medical history.

After the policy was issued in June, 1963, she incurred hospital expenses in May, 1964, for the removal of a cancerous lump from her left breast and the subsequent removal of her uterus because of a cancerous condition. The defendant declined payments of the expenses for these hospitalizations.

The jury specifically found that Mrs. Delaney did not make a "false application concerning her hospital records." The jury also expressly found that no false statement was made by her which materially affected the risk of the insurance company. The trial court accepted the jury's verdict which, in our opinion, reached a result that

---

[15] *Polar Mfg. Co. v. Integrity Mut. Ins. Co.; Langlois v. Wisconsin National Life Ins. Co.; Stockinger v. Central National Ins. Co.;* all *supra,* footnote 3.

is supported by credible evidence. The majority opinion, however, concludes that her nondisclosures increased the insurance company's risk as a matter of law.

The majority opinion acknowledges the familiar rule that if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the jury's verdict it may not be upset. *Zweifel v. Milwaukee Automobile Mut. Ins. Co.* (1965), 28 Wis. (2d) 249, 254, 137 N. W. (2d) 6; *Ide v. Wamser* (1964), 22 Wis. (2d) 325, 331, 126 N. W. (2d) 59.

The majority of the court is impressed by the fact that two employees of the defendant's underwriting department and one employee of its medical department testified that the company would not have written this policy if they had been in possession of all the facts. In our opinion, the jury (knowing that the company was disputing the claim) may have considered that its employees were mistakenly using hindsight to describe what they previously might have done. Less charitably, the jury may even have believed that such witnesses were merely protecting their jobs and, thus, may have wholly rejected their testimony as self-serving and false. There is nothing inherently true or uncontrovertibly trustworthy about such testimony so as to warrant a finding that these interested witnesses were correct as a matter of law. In *Martell v. Klingman* (1960), 11 Wis. (2d) 296, 105 N. W. (2d) 446, this court declined to hold that the nondisclosures increased the risk as a matter of law.

In a case decided at this assignment, *State ex rel. Stollberg v. Crittenden,* post, p. 413, 139 N. W. (2d) 94, the court made the following observation about uncontradicted evidence in a paternity case:

"Counsel for relator stress the fact that her testimony, that she did not have intercourse with any men other than defendant during the conception period, was not directly controverted. However, the jury were the judges of her credibility and were not required to accept her testimony as true."

A related view is expressed in two other recent decisions of this court. *Estate of Staniszewski* (1965), 28 Wis. (2d) 403, 409, 137 N. W. (2d) 57; *Lazarus v. American Motors Corp.* (1963), 21 Wis. (2d) 76, 84, 123 N. W. (2d) 548. In view of the interest in the lawsuit held by these witnesses for the defendant, the jury was not obligated to adopt their testimony.

The jury may have believed that if Mrs. Delaney had been out to cheat the company she would not have even disclosed the two hospitalizations which she did report. *Platke v. John Hancock Mut. Life Ins. Co.* (1965), 27 Wis. (2d) 1, 10, 133 N. W. (2d) 277. In addition, the jury may have weighed the fact that Mrs. Delaney already had a perfectly valid policy of insurance with Blue Cross and would have had no purpose in practicing deceit in order to obtain a policy from the defendant.

There is no apparent nexus between Mrs. Delaney's past medical attention and her recent hospitalizations which concerned cancer; a full disclosure of such medical history would not have alerted the company to the prospective peril of her having hospitalization for cancerous conditions. At least, the jury was entitled to have reached such a conclusion upon the evidence in this case; this is especially true since Dr. Henske testified that Mrs. Delaney's pre-existing ailments did not increase the probability that she would have cancer.

The failure to disclose the five-day hospitalization in 1961 for angina pectoris would appear to be a serious omission; however, the jury had before it credible evidence which would significantly diminish the weight to be given to this omission. Dr. Henske testified that he "certainly didn't tell her that she had heart trouble. . . ." He explained that Mrs. Delaney had been under stress from marital difficulties and went on to state:

"I think at that time Mrs. Delaney was having family trouble and I think the worry of the family trouble and everything caused her pain around her heart and I

thought it was serious enough to affect her heart because she had a pain there and I sent her to the hospital for that reason."

The jury could have interpreted Dr. Henske's testimony to mean that she did not in fact have anything more than a suspected heart condition. In Dr. Henske's opinion, Mrs. Delaney's general health at the time she applied for the policy with the defendant was "perfectly all right."

The case would be a closer one if Mrs. Delaney's claims against the defendant concerned hospitalizations which were for the treatment of a heart ailment; in such case, it would be more plausible to argue that her failure to have disclosed the previous episode was material as a matter of law. Upon this record, can it be said that her past hospitalizations for hemorrhoids, asthma, childbirth, or angina pectoris (let alone an infected toenail) had any relationship to breast-lump surgery? We think not.

In our opinion, there was a jury issue here, and the jury's conclusions may not properly be upset. We would affirm the judgment of the trial court.