WESTERN CASUALTY & SURETY COMPANY, Appellant: MELDAHL and wife, Plaintiffs, v. DE SMIDT and another, Respondents.

*No. 249. Argued March 3, 1971.—Decided March 30, 1971.*
(Also reported in 184 N. W. 2d 848.)

---

[10] *See Bohachef v. State*, post, p. 694, 185 N. W. 2d 339, decided this assignment, for further discussion of this matter.

674

For the appellant the cause was submitted on the brief of *Heide, Sheldon, Hartley, Thom & Wilk* and *W. A. Sheldon*, all of Kenosha.

For the respondents there was a brief by *Heft, Coates, Heft, Henzl & Bichler* and *Robert H. Bichler*, all of Racine, and oral argument by *Robert H. Bichler*.

HEFFERNAN, J. Inasmuch as the question of damages is not at issue unless the negligence questions are resolved favorably to the plaintiff, plaintiff-appellant has not argued damages before this court. The issues posed, therefore, are whether there was credible evidence to support the jury's verdict finding Phillip Meldahl negligent and to support the jury's apportionment of 65 percent of the negligence to Meldahl and 35 percent to De Smidt.

This accident occurred in Racine county, just north of the intersection of State Highway 31 and County Trunk RK. County Trunk RK is a county line road lying between Racine and Kenosha counties. Highway 31 is a two-lane, two-way, asphalt-surfaced highway for north and south traffic. The paved portion of the highway

was 24 feet wide and there was a 12-foot gravel shoulder on each side of the road. Highway 31 is intersected at right angles by County Trunk RK, which is an asphalt-surfaced, two-lane road for east and west traffic. The paved portion of the county road was 22½ feet wide. On the southwest corner of the intersection there was a stop sign to control eastbound traffic approaching Highway 31 on County Trunk RK. The sign is located 55 feet west of the west edge of Highway 31. Two-tenths of a mile south of the intersection there is a rise in Highway 31 which obstructs the view beyond that point of any person at the intersection attempting to observe traffic to the south. The speed limit on Highway 31 was 65 miles per hour.

On December 3, 1967, sometime between 12:30 p. m. and 12:46 p. m., De Smidt approached the intersection, traveling east on County Trunk RK. He stated that he stopped at the stop sign west of the intersection. His automobile was closely followed by a vehicle driven by Karen Balke. She testified that De Smidt stopped at the stop sign. De Smidt testified that, while so stopped, he looked to the south and to the north and saw no traffic. He then proceeded, he testified, slowly to the edge of Highway 31, looked again, and saw no traffic on Highway 31. He made a left turn onto Highway 31, proceeding north at a low speed. Karen Balke estimated his speed when he started up from the stop sign to be about 5 or 10 miles an hour. He proceeded north in his proper lane of traffic at a low speed. At or about the same time that De Smidt drove into Highway 31, the plaintiff Meldahl was approaching the intersection from the south on Highway 31, headed for his home in Racine to watch a Green Bay Packer football game. He was an avid fan, and the Packers were in contention for the league championship and the game was scheduled to begin shortly. He testified that he was traveling at a rate of 50 miles per hour when he came around a curve on

Highway 31 and over the rise to the south of the intersection. Meldahl stated that as he came over the rise he saw the De Smidt car approaching the stop sign, but, he testified, De Smidt slowed but did not stop at the sign and then proceeded north on Highway 31. At this point, apparently the point at which Meldahl realized that De Smidt was in the lane ahead of him, he was allegedly 200 feet from the intersection. He testified he did not reduce his speed because he intended to pass the De Smidt vehicle in the left lane. He then saw that the left lane was blocked by oncoming traffic. He applied his brakes, and he testified that upon so doing his car slid into and through the intersection as a result of loose gravel on the road. He then concluded that he would not be able to stop in time to avoid colliding with the rear of the De Smidt vehicle, so he accelerated, pulled to the east, and passed the De Smidt vehicle on the right shoulder of the highway without slowing down. No contact was made between these vehicles. When Meldahl turned his vehicle back onto the paved portion of the highway, he lost control of the automobile when the car struck the raised asphalt pavement. His car proceeded out of control and unbraked across the highway, and it struck a tree west of the highway and 259 feet north of the north edge of County Trunk RK. An eyewitness, Merton J. Fink, a nearby farmer, testified that at the time of the impact with the tree he estimated Meldahl's speed to be 50 miles an hour.

De Smidt testified he did not see the Meldahl vehicle until it passed him on the right at a distance of about 200 feet north of the intersection. Meldahl, on the other hand, testified that he passed De Smidt's vehicle at a point approximately 30 feet north of the intersection.

The Racine county sheriff's deputy who investigated the accident immediately after it occurred testified that he was able to trace tire marks from the Meldahl vehicle from the point where it came to rest against a tree to a

point south of the intersection. The deputy was unable to say how far south of the intersection the skid marks first commenced, but Karen Balke testified that the skidding commenced 150 feet south of the intersection. The sheriff's deputy testified that Meldahl's vehicle left skid marks on the highway for 357 feet from the point where they started south of the intersection to the point where they first left the pavement on the east edge of the highway north of the intersection. He testified that the distance between the point where the tire marks reappeared on the east edge of the highway to the point where the skid marks again left the road on the west edge of the highway was 48 feet. The distance from where the vehicle left the west edge of the road to where it struck the tree was another 36 feet. He stated that he recalled no gravel on the paved portion of the road in this intersection.

Pages 40 and 41 of the Wisconsin Manual for Motorists were admitted into evidence and went to the jury. These pages show that stopping distances are dependent upon variable factors such as the condition of brakes, tires, and roads. These tables demonstrate that, when a driver is traveling 70 miles an hour, his car will travel 77 feet before he can react sufficiently to activate the brake pedal. It then takes another 237 to 295 feet of braking distance to stop the vehicle at 70 miles an hour.

Karen Balke testified that Meldahl was proceeding northward at a high rate of speed, although she did not give any estimate of speed in miles per hour. The fact that Karen Balke was unable to estimate the speed in terms of miles per hour does not totally eliminate the probative value of her testimony that Meldahl was proceeding at a high rate of speed. Nor can we conclude, as argued by the appellant, that the case of *Schwarz v. Winter* (1956), 272 Wis. 303, 75 N. W. 2d 447, holds that, where a witness testifies on direct examination that a vehicle was proceeding "pretty fast," the probative

value of that testimony is eliminated because the witness could not reduce that observation to a conclusion phrased in miles per hour.

We are satisfied, however, that the physical facts plus the testimony of Karen Balke formed a sufficient evidentiary basis for the jury to conclude that Meldahl was traveling in excess of the posted speed limit. Karen Balke testified that the Meldahl car started skidding 150 feet south of the intersection. The testimony of the sheriff's deputy indicates that Meldahl braked his vehicle for 357 feet from a point where the tire marks commenced south of the intersection to a point where they left the pavement on the east side of the highway. This distance is 62 feet in excess of the maximum braking distance required by a vehicle traveling 70 miles an hour. It is therefore apparent that the jury, from the evidence, could properly reach the conclusion that Meldahl was exceeding the posted speed limit and was negligent as to speed just prior to the accident. While the presence of skid marks in excess of the maximum braking distance as given in the Manual for Motorists is not conclusive on the question of speed, it creates a question as to speed and provides an evidentiary basis upon which a jury could reach a finding of fact. *Nieman v. American Family Mut. Ins. Co.* (1968), 38 Wis. 2d 62, 155 N. W. 2d 809. The actual stopping distance, together with the standards as set forth in the Manual for Motorists, which was received into evidence, provides sufficient basis for the jury to have found Meldahl negligent as to speed. This conclusion is fortified and is supported by the testimony of Karen Balke.

Meldahl, as a driver on a through highway, had the right-of-way over drivers who enter the highway at or about the same time. Nevertheless, Meldahl observed De Smidt enter the highway and, according to his testimony, saw De Smidt refuse to yield the right-of-way.

Under these circumstances, he thereupon had the duty to exercise ordinary care to avoid the collision. The jury could well have concluded that Meldahl was, in addition to speed, either negligent as to lookout for his failure to observe oncoming traffic immediately and to reduce his speed or that he was negligent as to management and control for failure to reduce his speed immediately upon observing traffic approaching in his left lane from the opposite direction and which would have prevented his passing the De Smidt car to the left. Moreover, there was testimony that, after having slowed down following the braking of his vehicle, Meldahl accelerated his vehicle to pass De Smidt on the shoulder. Under the circumstances herein, the jury could have concluded that, by driving at his admitted rate of speed, over 40 miles per hour, on the sloping gravel highway and cutting back onto the road, he was negligent in view of the fact that there was evidence that there were no obstacles in front of him which would have prevented him from remaining on the shoulder and bringing his vehicle to a controlled halt. The record is replete with evidence indicative of Meldahl's negligence.

We are also satisfied that the jury properly apportioned the negligence. Although it is disputable, the jury could well have concluded that De Smidt was negligent for lookout and for failure to yield the right-of-way to an automobile approaching on a through highway, and also that he was negligent in driving at a speed so slow as to impede the normal and reasonable flow of traffic on the highway. There is evidence of considerable negligence on both parties.

While the jury could have found that De Smidt was guilty of several acts of negligence, we have frequently said that the comparison of negligence is not to be reached by a tallying of the separate items of negligence

that may be attributable to each of the parties.[1] Rather, it is the function of the jury to determine which party's negligence as a whole was the predominant cause of the accident. A jury might well find that one item of negligence far outweighed the causal effect of several items of negligence by the other party. *Pruss v. Strube* (1968), 37 Wis. 2d 539, 155 N. W. 2d 650. The jury could well have concluded that the excessive speed at which the Meldahl vehicle was traveling was the principal and predominant cause of this accident and could well have apportioned the negligence of Meldahl at 65 percent.

". . . we have repeatedly held that ordinarily apportionment of negligence is for the jury. The general rule is that a jury's findings as to negligence apportionment will be sustained if there is any credible evidence that, under any reasonable view, supports such findings." *Barber v. Oshkosh* (1967), 35 Wis. 2d 751, 754, 151 N. W. 2d 739; *See also: Longville v. Leusman* (1970), 48 Wis. 2d 251, 179 N. W. 2d 823.

In respect to both the question of negligence and the question of apportionment, we have uniformly adopted the standard that a jury verdict will not be upset if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings. The evidence must be viewed in the light most

---

[1] Plaintiff argues, as a matter of law, that the negligence of De Smidt must be held to be greater than that of Meldahl. He relies on a number of left-turn cases of which *Schwarz v. Winter* (1956), 272 Wis. 303, 75 N. W. 2d 447, is typical. This line of cases is not in point in the instant situation. This is not a case in which an oncoming vehicle turned across the path of a vehicle that was proceeding lawfully in the exercise of its right-of-way. The situation is different in the instant case, and the legal principles in *Schwarz* are not intended to apply to a situation where, as here, it is alleged that the right-of-way was invaded by one entering the highway from an intersection, and turning into a lane ahead of the other vehicle.

favorable to the verdict. This is particularly true when, as here, the jury's verdict has received the approval of the trial judge. *Delaney v. Prudential Ins. Co.* (1966), 29 Wis. 2d 345, 139 N. W. 2d 48. Applying these standards in this case, we are satisfied that the judgment should be affirmed.

*By the Court.*—Judgment affirmed.