LANGLOIS, Respondent, v. WISCONSIN NATIONAL LIFE IN-
SURANCE COMPANY, Appellant.*

*January 11—February 5, 1963.*

---

\* Motion for rehearing denied, with $25 costs, on April 2, 1963.

152

For the appellant there was a brief by *Douglas, Omernik & Bitney* of Spooner, and oral argument by *Edward E. Omernik.*

For the respondent there was a brief by *Cameron, Cameron & Shervey,* and oral argument by *Robert O. Weisel,* all of Rice Lake.

FAIRCHILD, J. 1. *Defendant not entitled to new trial as a matter of right.* Defendant's principal challenge is that Questions Nos. 2 and 3 of the special verdict did not correctly present the issues of fact with respect to the claim of fraud. It does not appear that defendant requested any form of special verdict. It made no objection to the form prepared by the court. It did not move for a new trial on the ground of impropriety in the form of verdict.

"We deem the correct rule to be that no error of the court should be reviewable *as a matter of right* on appeal without first moving in the trial court for a new trial bottomed on such error, if the error is of a category that a trial court could correct by granting a new trial."[1]

2. *We do not exercise our discretion to grant a new trial.* Defendant asks us to use our discretionary power to order a new trial where it appears that the real controversy has not been fully tried or that it is probable that justice has miscarried.[2] We have reviewed the evidence with that request in mind.

Langlois and his wife owned a small country store. They both worked in it. Gross sales in 1959 and 1960 were about $85,000, gross profit on sales $10,000 in 1959 and $12,000 in 1960, net profit after deducting operating expenses (including depreciation) $3,000 in 1959 and $2,600 in 1960.

Two agents of defendant, Mitchell and Twining, called on Langlois to solicit his application for a policy. He was carrying a disability policy with another company also providing a monthly benefit of $250. He agreed to take defendant's policy with the intention of canceling the other. Mitchell had known Langlois before and had been in the store frequently on behalf of a company which supplied the store with dairy products. He had just started to sell insurance. Twining was more experienced and was training Mitchell. All the answers in the application were inserted by Mitchell or Twining. Langlois signed it but testified that he did not read it.

Defendant alleged that certain answers were false and fraudulent, *i.e.,* (1) that Langlois said he was "owner and manager" of a grocery when in fact he was a co-owner with his wife; (2) that Langlois said his occupation was "manager and general store duties" when in fact he was a co-owner;

---

[1] *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 518, 80 N. W. (2d) 380.
[2] Sec. 251.09, Stats.

(3) that Langlois said his "earnings in past year" were $8,500 when in fact the entire earnings of the business operated by him and his wife were $3,000.

The claims of fraud as to Points Nos. 1 and 2 are dubious at best and have not been stressed on this appeal. We mention them only because their presence as issues at the trial may be a reason why the court chose to frame a verdict in general terms of giving false information rather than to ask specifically whether Langlois represented that his earnings for one year were $8,500.

We think a jury question was presented whether Langlois did in fact represent his earnings at $8,500.

We have held that,

". . . misstatements inserted in the application by the agent without the knowledge of the assured do not become misrepresentations of the insured by reason of the fact that he signed the application." [3]

Langlois testified he did not recall the agents asking about his earnings or net income. There was conversation about his volume of business and he showed them a card on which he had noted his monthly total sales. He had no understanding that the amount of the benefit depended upon the amount he was making and this was not explained. In order to state what he was making, he would have to dig out his income tax and he did not do that. He conceded, by way of hindsight, that, ". . . if there was talk [about profit] . . . I was talking about the volume and they were talking about net earnings."

Mitchell and Twining testified in general terms that all the questions were asked of Langlois and his answers recorded. Twining testified to some conversation about annual income in connection with the amount of life insurance Lang-

---

[3] *Taluc v. Fall Creek Farmers Mut. Fire Ins. Co.* (1931), 203 Wis. 319, 322, 234 N. W. 364. See also *Arneberg v. Continental Casualty Co.* (1922), 178 Wis. 428, 433, 434, 190 N. W. 97, 29 A. L. R. 93.

lois carried. He also testified that he told Langlois his income was not large enough for him to carry a policy paying $500 monthly benefit. Mitchell testified that he wrote the $8,500 figure in the application although he was not positive he wrote it while in the store. On adverse examination he had testified he could not honestly say how he arrived at the $8,500 figure. He recalled seeing some figures on total sales but Twining said he saw none.

It was clearly established that the statement that the earnings were $8,500 for a year materially affected the defendant's acceptance of this risk. An underwriter testified that defendant would not ordinarily issue a policy providing disability benefits amounting to more than 70 percent of earnings. The reason given was that if disability benefits are as great as earnings, then an insured who is temporarily disabled is less likely to desire to return to work.

The term "earnings" is defined in Webster's New International Dictionary (3d ed., unabridged), as: "something (as wages or dividends) earned as compensation for labor or the use of capital; the balance of revenue for a specific period that remains after deducting related costs and expenses incurred." There is no dispute about the proposition that an accurate figure for Langlois' earnings for the year preceding the application would have been less than $3,000.

Thus with respect to the allegedly fraudulent statement concerning earnings, the only question of fact was whether Langlois had made the statement. Its materiality, if made, was clearly established.

Defendant argues that the special verdict was framed on the theory that in order to avoid the policy, defendant must not only prove a misrepresentation but must also prove both (1) that it was made with intent to deceive, and (2) that it increased the risk. Defendant correctly asserts that it is unnecessary to prove both propositions. The case was appar-

ently tried with sec. 209.06 (1), Stats., in mind. It provides: .

"No oral or written statement, representation, or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, unless such statement, representation, or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss."

In *Polar Mfg. Co. v. Integrity Mut. Ins. Co.*[4] we said with respect to this section: [5]

" 'It will be observed that the last lines of the statute "or unless the matter misrepresented or made a warranty, increased the risk or contributed to the loss," are connected with what precedes by the disjunctive "or." In other words, it is probably the true construction of the statute that if the misrepresentation in an application regularly obtained increases the risk, that is sufficient to defeat recovery even if there is no actual intent to deceive.' "

On appeal defendant points out that since 1951 policies of accident and sickness insurance have been subject to sec. 204.31 (4) (c), Stats., which provides that:

"The falsity of any statement in the application for any policy covered by this section may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer."

It is unnecessary in this case to decide the relationship between these two sections insofar as accident and sickness insurance are concerned. Under either of them, it was unnecessary for defendant to prove an intention to deceive. It

[4] (1959), 7 Wis. (2d) 443, 446, 96 N. W. (2d) 822.
[5] Originally appearing in *Olson v. Herman Farmers Mut. Ins. Co.* (1925), 187 Wis. 15, 18, 203 N. W. 743.

was enough to prove the making of the misrepresentation and its effect upon the risk undertaken.

Defendant's real quarrel is with the use of the word "intentionally" in Question No. 2. It would argue that the use of this word instructed the jury that it must find an intent to deceive before it could answer the question "Yes." The instructions given by the court with reference to the question do not so indicate. The court instructed that:

"In answering these questions [Nos. 2 and 3] you will have in mind that *the defendant must establish first that representations of fact were made by the plaintiff*, second that such representations were false, third that the agents of the defendant believed the representations to be true and, fourth, that the defendant was thereby induced to issue a policy of insurance at an increased risk." (Emphasis supplied.)

We are convinced upon our review of the record under all the circumstances that the real issue which must have been apparent to the jury was whether Langlois in fact made the misrepresentation as to earnings which appears in the application and that the jury resolved the issue by its answer "No" to Question No. 2. Although it would have been better to have omitted the word "intentionally" from Question No. 2, it seems improbable that the jury was misled by its presence.

3. *Reduction in benefits under the policy.* Defendant's policy contains a provision for reduced benefits as authorized by sec. 204.31 (3) (b) 6, Stats., "Relation of Earnings To Insurance." Under it, defendant was entitled to show the total insurance benefits provided under its policy and the other policy which Langlois had, if still in force. It was also entitled to show his monthly earnings at the time of disability or average monthly earnings for the two years preceding, and if the greater of those figures was less than the total monthly benefits provided under both policies, a reduction of defendant's liability would follow, although the total monthly benefits under both policies could not be reduced below $200.

This issue was raised by defendant's answer. Although defendant proved that during 1959 the net income of the business operated by the combined efforts of Langlois and his wife was $3,000, or an average of $250 per month, defendant failed to make any more specific proof of the portion thereof which could be ascribed to Mr. Langlois. Langlois' counsel offered the other insurance policy in evidence, but counsel for the defendant objected. At the close of the trial there was a colloquy which indicated that it was the intention of both parties and the court to consider this matter of reduction as a separate issue for determination by the court and not by the jury. No effort appears to have been made on behalf of defendant to submit this issue to the court after the verdict and before judgment, and there is no explanation of why this was not done. There is nothing to suggest that either plaintiff's counsel or the court in any way objected or prevented it. Under the circumstances we deem the matter waived.

*By the Court.*—Judgment affirmed.

The following opinion was filed April 2, 1963:

Per Curiam (*on motion for rehearing*). Defendant, for the first time on this motion for rehearing, contends that the judgment should be modified to provide that the payments ordered to be made by the defendant should terminate upon the death of the insured if that event happens to occur before the five-year-expiration date provided for in the judgment. Although this point has not been raised until this time, it does appear that the payments to be made pursuant to the insurance policy for sickness indemnity should not continue after the death of the insured, in the event that the death does happen to occur prior to May 15, 1965, the date of the last payment under the five-year-payment provision of the contract. The judgment, as entered in the lower

court, should be modified in this respect and otherwise affirmed as per our original mandate. All of the other arguments advanced by the appellant in support of its motion for rehearing have been considered and the court stands on its original opinion.

The motion for rehearing is denied with $25 costs and, since the modification in the judgment results from a point raised for the first time on motion for rehearing, costs on the denial of the motion for rehearing are to be assessed against the appellant.

In accordance with this opinion, our original mandate is modified as follows: Paragraph 3 of the judgment as entered by the lower court is amended to read as follows:

"Further ordered that the plaintiff Leon N. Langlois do have and recover of the defendant the sum of Two Hundred Fifty Dollars per month for a period commencing April 1, 1962, and ending May 15, 1965, payments to be made on the first day of each month; provided, however, that in the event that the plaintiff should die prior to May 15, 1965, payments as ordered should cease as of the date of death."

In all other respects, judgment appealed from is affirmed.