Arthur F. BECKER, Plaintiff-Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
a corporation, Defendant-Respondent.

Court of Appeals

*No. 92–3153. Submitted on briefs August 20, 1993.—Decided
December 8, 1993.*

(Also reported in 512 N.W.2d 191.)

705

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Timothy S. Knurr* of *Schoone, Fortune & Leuck, S.C.* of Racine

On behalf of the defendant-respondent, the cause was submitted on the brief of *William O. Kupfer* of *Kupfer & Kupfer*, of Kenosha.

On behalf of The Office of the Commissioner of Insurance, an amicus curiae brief was filed by *James E. Doyle*, attorney general, and *Laura Sutherland*, assistant attorney general, and *Fred Nepple*, general counsel of the office of the commissioner of insurance.

On behalf of Coalition of Wisconsin Aging Groups, an amicus curiae brief was filed by *Mitchell Hagopian* of Elder Law Center.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J. The issue on appeal is whether State Farm Mutual Automobile Insurance Company properly refused to renew a Basic Medicare Supplement Policy previously sold to Arthur F. Becker. The circuit court ruled that State Farm's original sale of the policy to Becker violated the provisions of Wis. Adm. Code sec. **Ins 3.39**(25)(b), which bars the sale of a medicare supplement policy if the effect is to provide the insured with more than one such policy. Because the administrative rule was not yet in effect when the

sale occurred, we reverse the order and remand with directions to enter judgment for Becker.

The parties stipulated to the facts in the circuit court, and they reaffirm their stipulation on appeal. Becker is retired from Snap-On Tools Corporation. As part of his retirement benefits, Snap-On provided Becker with a health benefit program. Wishing to procure additional health insurance benefits because he had exhausted the major medical benefits under his retirement plan with Snap-On, Becker applied to State Farm for Basic Medicare Supplement coverage. State Farm issued the requested coverage to Becker effective March 13, 1990. The policy recited a renewal date of one year later, March 13, 1991.

The policy's renewal provision stated, in relevant part:

> RENEWABLE AT THE OPTION OF THE COMPANY. . . . We will not refuse to renew your policy *except in the event of fraud or misrepresentation in the application, overinsurance,* discontinuance of all policies in the class in which this policy falls, or the filing of fraudulent claims. [Emphasis added.]

On January 3, 1991, State Farm wrote to Becker advising that it would not renew the policy on the renewal date. State Farm explained: "[I]t is our understanding that you have other coverage in force that supplements Medicare from a former employer. Since it is not our usual underwriting practice to provide a duplication of coverage, the above referenced policy will not be renewed in accordance with the policy Renewability provision."

Becker responded with this action for specific performance, seeking to compel State Farm to renew the policy. State Farm answered, contending, *inter alia,*

that its original issuance of the policy was a mistake and that any renewal would be in violation of Wisconsin law.

The trial court ruled in favor of State Farm. Becker appeals. We have received *amicus curiae* briefs from the Office of the Commissioner of Insurance and the Elder Law Center of the Coalition of Wisconsin Aging Groups.[1]

## STANDARD OF REVIEW

When the governing facts are stipulated, the question is one of law. *First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977). In addition, the application of a statute (or administrative rule) to a set of facts also presents a question of law. *See State v. Schambow*, 176 Wis. 2d 286, 297, 500 N.W.2d 362, 366 (Ct. App. 1993). We review questions of law independently of the trial court's ruling. *Id.* Nonetheless, we value a trial court's decision on such questions.

## THE RENEWAL PROVISION OF THE POLICY

### "Overinsurance"

The parties agree that Becker's Snap-On insurance and State Farm insurance provided "overlapping" coverage in some areas. They also agree that the State Farm policy provided additional and different coverage

---

[1] Although both *amicus* briefs are informative, some of the issues they raise were not raised by Becker or State Farm in the trial court. We address only one of these waived issues: the effective date of the administrative code provision barring the sale of more than one Medicare supplement policy. *See infra* text at 712.

in other areas. The State Farm policy permits State Farm to nonrenew in a case of "overinsurance." The parties disagree whether the partial overlap in coverage created by the two insurance programs constitutes "overinsurance" within the meaning of the State Farm renewal clause.[2]

In deciding this issue, we bear in mind a fundamental principle when construing an insurance policy: doubts and ambiguities in an insurance policy are resolved in favor of the insured. *Rockline, Inc. v. Wisconsin Physicians Serv. Ins.*, 175 Wis. 2d 583, 590, 499 N.W.2d 292, 295 (Ct. App. 1993).

"Overinsurance" carries a variety of meanings, and insurance policy clauses prohibiting "overinsurance" serve a variety of purposes. In some instances, "overinsurance" refers to a situation where multiple coverages exist to a degree where the insured is tempted to trigger the insured event and thereby obtain the substantial coverage proceeds. An "overinsurance" clause prohibiting such excess coverage serves public policy by reducing the temptation of such fraud. *See Struebing v. American Ins. Co.*, 197 Wis. 487, 493-94, 222 N.W. 831, 834 (1929).

While the public policy served by such an "overinsurance" clause is apparent in life insurance and property insurance cases, we doubt its application in a health insurance case such as this. We think it unlikely that an insured is tempted to cause his or her own

---

[2] Since the trial court held that any renewal by State Farm would violate the administrative code, the court did not address this particular issue. However, since State Farm raised this issue in the trial court and renews it on appeal, we address this argument.

injury or illness in order to take advantage of multiple health insurance coverage. And, State Farm makes no such public policy argument in this case.

"Overinsurance" is also sometimes used to define an insurance contract provision which prohibits other insurance beyond a certain amount. 9 G. COUCH, CYCLOPEDIA OF INSURANCE LAW sec. 37B:89, at 91 (rev. ed. 1985). Here, however, the State Farm policy recites no such ceiling.

"Overinsurance" is also sometimes used as though synonymous with "other insurance," "additional insurance," and "double insurance." *Id.*[3] This appears to be the definition which State Farm urges in this case since, in its brief, State Farm contends that "overinsurance" is "simply the situation when policies are obtained which, when combined, provide coverage for more than 100% of the loss." Thus, State Farm reasons that it was entitled to refuse to renew the policy.

We disagree that the term "overinsurance" as used in this policy can be defined on such a narrow basis. Were State Farm correct, even minuscule "overlapping" would constitute "overinsurance," thereby precluding the renewal of a policy which otherwise extends substantial additional coverage not duplicated in any other policy.

Here, while the Snap-On and State Farm insurance programs did provide some overlapping coverage, State Farm's Medicare Supplement Policy provided additional, different or accelerated coverage from the

---

[3] Section 631.43, Stats., addresses this scenario of other insurance. The statute addresses the obligation of an insurer which attempts to preclude or limit its coverage where there is "other insurance" that covers the same loss. This statute applies to coverage provisions, not to renewal provisions. Therefore, we do not address the statute further.

Snap-On program in the following areas: (1) prescription drugs, (2) Medicare-mandated copayments for certain days of qualified nursing home care, (3) skilled care in a nursing home regardless of whether the care qualified for Medicare payment, and (4) the waiting period between a prior discharge and readmission for purposes of paying the Medicare hospital deductible. We deem these to be important, significant and valuable areas of health care insurance coverage. This is especially so under the facts of this case where Becker sought this additional coverage because he had exhausted his major medical coverage under his basic plan with Snap-On.

[6]

"Overinsurance" is necessarily one of degree to be decided on a case-by-case basis. In making this decision, we do not just compare the coverages of the two insurance programs. We also look to the circumstances of the particular case. Here, considering that the State Farm policy provided subsequent and added coverage important to Becker, we do not conclude that the two insurance programs constituted "overinsurance" as that undefined and ambiguous term appears in the State Farm policy.

## THE ADMINISTRATIVE CODE

Wisconsin Adm. Code sec. **Ins. 3.39**(25)(b) provides, "Any sale of Medicare supplement coverage which will provide an individual more than one Medicare supplement policy or certificate is prohibited." Relying on this rule, the trial court held that State Farm properly refused to renew its Medicare Supplement Policy.

■

However, we learn from the *amicus* brief of the Office of the Insurance Commissioner that this administrative rule was not yet in effect when State Farm sold its policy to Becker in March 1990. The rule did not become effective until August 1990. *See* Wis. Adm. Code sec. **Ins. 3.39**(25)(b) (history of code section showing effective date of rule as August 1, 1990). On this threshold basis, we reverse the judgment.

■

We acknowledge that this issue was not raised in the trial court, and we rarely will reverse a trial court ruling on a waived issue. However, our discretionary power of reversal pursuant to sec. 752.35, Stats., extends to situations of waiver where the exercise of our discretionary power is necessary to achieve justice in the individual case. *Vollmer v. Luety*, 156 Wis. 2d 1, 19, 22, 456 N.W.2d 797, 805, 807 (1990) (unobjected to special verdict reviewed pursuant to court of appeals' discretionary power of reversal under § 752.35). *See also In re C.E.W.*, 124 Wis. 2d 47, 55-59, 368 N.W.2d 47, 51-53 (1985) (unobjected to jury instructions reviewed pursuant to supreme court's discretionary power of reversal in sec. 751.06, Stats.).

Here, were we to employ waiver, we would allow this case to be governed by an administrative rule not yet in effect. Such would be fundamentally unfair and a miscarriage of justice.

However, this does not end our discussion. Although the administrative rule was not in effect at the time of the initial sale of the State Farm policy, it was in effect at the time the policy was up for renewal. Therefore, we must further consider whether the attempted renewal in this case constituted a "sale" such that it is forbidden by the rule.

Whether the renewal of a policy constitutes a new and independent contract or a continuation of the original contract primarily depends on the intention of the parties as ascertained from the instrument itself. 18 G. COUCH, CYCLOPEDIA OF INSURANCE LAW sec. 68:40, at 42 (rev. ed. 1983); *see also Reserve Life Ins. Co. v. La Follette*, 108 Wis. 2d 637, 646-47, 323 N.W.2d 173, 177 (Ct. App. 1982). In *Reserve Life*, the insurance policy contained a renewal clause providing that the insured " 'shall have the right and option to continue this policy in force, subject to all provisions, conditions and limitations herein contained.' " *Id.* (emphasis omitted). The court of appeals concluded that this language revealed "the known intention of the parties." *Id.* at 647, 323 N.W.2d at 177.

We reach the same conclusion in this case. Absent certain enumerated instances, one of which is overinsurance, State Farm expressly promised to renew the policy.[4] Absent such instances, the policy does not require the parties to negotiate a new agreement or State Farm to issue a new policy. Rather, the existing policy is automatically renewed. Thus, the intention of the parties as expressed in their contract is self evident. *See id.* Since we have held that the State Farm policy does not constitute overinsurance and since State Farm invokes no other ground for nonrenewal, we conclude that the automatic renewal of the State

[4] The other instances are: (1) fraud, (2) misrepresentation, (3) discontinuance of all policies in the class in which the policy falls, and (4) the filing of a fraudulent claim. State Farm does not invoke any of these other grounds for nonrenewal.

Farm policy is not a "sale" within the meaning of the administrative code.[5]

We reverse the order and remand with directions to enter judgment of specific performance in favor of Becker.

*By the Court.*—Order reversed and cause remanded with directions.

SNYDER, J. (*dissenting*). Because I disagree that Becker may require State Farm to continue an insurance policy that represents a prohibited insurance practice in Wisconsin, I respectfully dissent.

Becker purchased the State Farm Medicare Supplement Policy five months prior to the insurance commissioner promulgating an administrative rule prohibiting more than one Medicare supplemental policy or certificate being sold to a Wisconsin Medicare insured. Accordingly, State Farm advised Becker that it was canceling his State Farm Medicare Supplement Policy because the policy was in addition to existing Snap-On coverage and amounted to "overinsurance," the very abuse sought to be addressed by the insurance

---

[5] In the dissent, our colleague argues that the administrative rule bars renewal of the policy. In so doing, the dissent assumes that the attempted renewal in this case constituted a "sale" within the meaning of the administrative rule. However, we have explained why this attempted renewal was not a "sale" within the meaning of the administrative rule. The dissent does not appear to challenge this conclusion, much less explain why it is wrong. As such, the dissent's assumption creates and then overlooks a serious constitutional problem: the legislature may not by a *subsequent* enactment impose a substantial impairment upon a party to an insurance contract. *Reserve Life Ins. Co. v. La Follette*, 108 Wis. 2d 637, 648-49, 323 N.W.2d 173, 178 (Ct. App. 1982).

commissioner's rule. Becker responded that even if such coverage was now prohibited, his State Farm supplemental coverage is protected by the insurance contract renewal provision.

The general rule is that statutes operate prospectively and should never be construed as having a retrospective effect on the provisions of an existing contract of insurance unless the terms of the statute clearly show a legislative intent that the statute operate retrospectively. *See* 1 GEORGE J. COUCH, CYCLOPEDIA OF INSURANCE LAW 2D § 13:15, at 840-41 (rev. ed. 1984). State Farm does not contest Becker's enforcement of the insurance contract through a renewal date following the effective date of the administrative rule. State Farm maintains that renewing the contract beyond that renewal date is in violation of the prospective effect of the administrative rule.

The issue is whether Becker's contract rights survive the insurance commissioner's prohibited practice rule. Becker concedes that the State Farm policy duplicates coverage provided in the Snap-On plan but wishes to retain the State Farm coverage to obtain additional prescription drug reimbursements.[1] The trial court held that State Farm had the right to terminate the coverage.[2]

By promulgating the administrative rule, the insurance commissioner preempted persons in Wisconsin from contracting for more than one Medicare

---

[1] Becker paid a $1590.60 annual premium and a $10 membership fee for the State Farm Supplement Policy coverage.

[2] The trial court's order read: "That at all times material hereto, State Farm Mutual Automobile Insurance Company had the right to refuse renewal of the policy in question with said right to refuse renewal effective as of March 13, 1991." March 13, 1991 was the policy renewal date.

supplemental coverage after August 1, 1990.[3] Where a provision is required by law (statute or administrative rule), it is mandatory and obligatory on the insured as well as the insurer. *Jones v. Preferred Accident Ins. Co.*, 226 Wis. 423, 425-26, 275 N.W. 897, 898 (1938). Where there is an applicable rule of law, the legislature has declared:

> the public policy of the state to be that that which had theretofore been subject to contract between the parties shall hereafter be by certain prescribed forms and with specific conditions concerning the respective rights and duties of the parties thereto, the statutory provisions step in and control and regulate the mutual rights and obligations rather than the provisions of any contract the parties may attempt to make varying therefrom.

*Id.* at 426, 275 N.W. at 898 (quoting *Williams v. Travelers Ins. Co.*, 168 Wis. 456, 462, 169 N.W. 609, 610-11 (1919)). "When the legislative will is expressed in the peremptory terms of a statute, it 'is paramount and absolute, and cannot be varied or waived by the private conventions of the parties.' " *Id.* at 426, 275 N.W. at 898-99 (citations omitted). That holding resolves the conflict between an insured's contract rights surviving the prospective application of an administrative code prohibition.

---

[3] I am bemused by the *amicus curiae* position of the insurance commissioner that the administrative rule applies only to an insurer. The commissioner maintains that if an insurer violates the rule, it is subject to civil forfeitures and other penalties, but that the rule does not apply to void the contractual rights of the insured (whom it is intended to protect) from entering into contracts with an insurer for duplicative coverage. It was less confusing when "prohibited" meant "prohibited."

717

Whether or not we agree with government intervention, for whatever purpose, into a citizen's right to handle his or her own affairs, once government does intrude we must adhere to the rule of law. Becker is clearly a member of the class of persons (Wisconsin Medicare recipients) intended to be protected from excessive Medicare supplemental coverage by the limitation to just one supplemental coverage. Becker desires an exemption from the class protection from such potential abuse and excess.[4] However, Becker cannot pursue contractual rights that are contrary to the prevailing law.

In order to preserve Becker's access to the prohibited Medicare supplemental coverage, my colleagues apply contract law. After holding that Becker retains his right to continue a prohibited policy because it was not prohibited at the insurance contract's inception, they apply contract principles that would look to the intent of the parties. The intentions of the parties are irrelevant to the continuance of a prohibited contract. It is not a matter of reading "[a]ny sale" to mean "[a]ny *future* sale" in order to return to the insurance contract and shield Becker from the effects of the code prohibition.

In its *amicus curiae* brief, the Elder Law Center argues that "[a] decision adverse to Mr. Becker could seriously disrupt the present coverage of many other retired employees." That may be true, but that argu-

---

[4] Whether Becker's reasons for wanting the State Farm coverage are meritorious is moot. In effect, the insurance commissioner has decided that one additional policy to supplement Medicare is enough to meet the needs of Medicare recipients, that such a restriction is good public policy, and that the insurance industry can meet the needs of Medicare recipients with just one additional coverage.

ment must be made to the insurance commissioner. The insurance commissioner created the administrative rule to protect Becker and "the many other retired employees" from coverage excesses and abuses. We cannot assume that the insurance commissioner failed to consider the loss of the Medicare recipients' individual insurance contract rights that would attend the application of the administrative rule.

In sum, Becker's problem is with the insurance commissioner, not with State Farm or the judiciary. In order to do business in Wisconsin, State Farm is obligated to avoid prohibited insurance practices. A prohibited insurance practice cannot be varied or waived by either Becker or State Farm based upon contract law or a past contractual relationship.

I would affirm the trial court.