# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 14-3098

———————————————

The Northwestern Mutual Life Insurance Company

*Plaintiff - Appellee*

v.

Douglas G. Weiher

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: June 10, 2015
Filed: December 1, 2015

——————————

Before LOKEN, BYE, and KELLY, Circuit Judges.

——————————

KELLY, Circuit Judge.

Douglas Weiher appeals the district court's grant of summary judgment allowing Northwestern Mutual Life Insurance Company (Northwestern) to rescind a disability insurance policy. Because we conclude Northwestern was not entitled to summary judgment, we reverse and remand.[1]

---

[1]We have jurisdiction under 28 U.S.C. § 1291.

# I. Background

Weiher lived in Minnesota and practiced dentistry in Wisconsin. In 2009, he owned two disability insurance policies: a Unum group disability policy, and a Great-West Life and Annuity Company (Great-West) policy. On May 4, 2010, Weiher applied to Northwestern for additional disability insurance coverage. In his application, Weiher specifically agreed that the Northwestern policy would replace his Great-West policy and that he would terminate the Great-West policy within 90 days of the date of the application. The application warned that any policy issued could be rescinded if the Great-West policy was not cancelled.

Northwestern offered Weiher a disability insurance policy with a monthly benefit of $8,400. On July 20, 2010, before receiving the policy, Weiher signed an Amendment to Application, which supplemented and amended the May 4, 2010, application, and agreed to terminate the Great-West policy by its next premium due date. The Amendment to Application also warned of Northwestern's rights to rescind the policy if the Great-West policy was not canceled. Weiher did not cancel the Great-West policy.

In 2012, Weiher began to suffer from neurological and autoimmune symptoms and could no longer practice dentistry safely. He submitted claims for disability benefits to Great-West and Unum. Great-West and Unum investigated his claim, ultimately determined he was totally disabled from his profession, and paid his claims.

Weiher also made a claim to Northwestern, who quickly discovered he had not terminated his Great-West policy. Northwestern then reviewed whether it would have issued the policy to Weiher if it had known he would not cancel the Great-West policy. Northwestern determined it would not have issued the policy because, in its view, doing so increased the risk that Weiher would be over-insured and would

therefore have more incentive to make a claim under the policy. Northwestern notified Weiher that it was rescinding the policy.

Northwestern filed an action in the United States District Court for the District of Minnesota claiming Weiher's promise to cancel the Great-West policy was a misrepresentation that entitled it to rescind the policy. Weiher counter-claimed for breach of contract. Both parties moved for summary judgment. Construing Weiher's promise to cancel the Great-West policy as a warranty, the district court applied Wisconsin law.[2] The district court found that Northwestern was entitled to rescind the policy under Wisconsin Statutes § 631.11(3)[3] because Weiher's failure to terminate the Great-West policy increased the risk to Northwestern. The district court entered judgment in favor of Northwestern. Weiher appeals.

## II. Discussion

Our review of a district court's decision on cross-motions for summary judgment is de novo. Netherlands Ins. Co. v. Main St. Ingredients, LLC, 745 F.3d 909, 912 (8th Cir. 2014). Summary judgment is appropriate "if the movant shows

---

[2]Although Northwestern initially disputed that Wisconsin law applied, it has abandoned that position on appeal. See Freitas v. Wells Fargo Home Mortg., Inc., 703 F.3d 436, 438 n.3 (8th Cir. 2013).

[3]Section 631.11(3) provides:

**Effect of Failure of Condition or Breach of Promissory Warranty**. No failure of a condition prior to a loss and no breach of a promissory warranty constitutes grounds for rescission of, or affects an insurer's obligations under, an insurance policy unless it exists at the time of the loss and either increases the risk at the time of the loss or contributes to the loss. This subsection does not apply to failure to tender payment of premium.

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(a)).

The parties agree on appeal that Wisconsin law applies. Accordingly, we apply substantive Wisconsin law in this diversity action. Netherlands Ins., 745 F.3d at 912–13. "We review the district court's application of [Wisconsin law] de novo without deference." Gersham v. Am. Cas. Co. of Reading, PA, 251 F.3d 1159, 1161 (8th Cir. 2001) (internal quotation marks omitted).

Under Wisconsin law, the interpretation of an insurance contract and the interpretation of a statute are both questions of law reviewed de novo. Fox v. Catholic Knights Ins. Soc., 665 N.W.2d 181, 186–87 (Wis. 2003). "We must predict how the Supreme Court of [Wisconsin] would rule, and we follow decisions of the intermediate state court when they are the best evidence of [Wisconsin] law." Netherlands Ins. Co., 745 F.3d at 913 (internal quotation marks omitted).

Under Wisconsin law, insurance contracts are "governed by the same rules that govern contract interpretation in general." Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co., 607 N.W.2d 276, 282 (Wis. 2000). As with other contracts, Wisconsin courts seek to "determine and give effect to the intent of the contracting parties." Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 673 N.W.2d 65, 73 (Wis. 2004). Where the language of the insurance contract is unambiguous, Wisconsin courts apply the contract's literal meaning. Wis. Label Corp., 607 N.W.2d at 282. Although insurance policies are construed as they would be understood by a reasonable insured, Wisconsin courts "do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium." Am. Girl, 673 N.W.2d at 73.

Wisconsin state law limits the circumstances under which an insurer may rescind an insurance policy. See Wis. Stat. § 631.11.[4] The district court in this case applied § 631.11(3), which pertains to failures of condition and breaches of promissory warranties after an effective policy is in place. Neither party argues on appeal that the district court erred in construing Weiher's promise to cancel the Great-West policy as a promissory warranty governed by § 631.11(3). Further, neither party disputes that Weiher's failure to cancel the Great-West policy occurred after an effective policy was in place.

A promissory warranty is "[a] warranty that facts will continue to be as stated throughout the policy period, such that a failure of the warranty provides the insurer with a defense to a claim under the policy.—Also termed continuing warranty." Fox, 665 N.W.2d at 190 (emphasis omitted) (quoting Black's Law Dictionary). "Promissory warranties are those that require that something shall or shall not be done after the policy takes effect." Id. at 189 (emphasis omitted) (quoting comment to Wisconsin Civil Jury Instruction 3105); accord 6 Couch on Ins. § 81:14 ("A promissory warranty is one by which the insured stipulates that something shall be done or omitted after the policy takes effect and during its continuance and has the effect of a condition subsequent."). Under the facts and procedural posture of this case, we cannot say the district court erred in construing Weiher's promise to cancel the Northwestern policy as a promissory warranty that was subject to the restrictions of § 631.11(3).

Weiher concedes that he failed to cancel his Great-West policy and this failure existed at the time of loss. He contends, however, the district court erred in not requiring Northwestern to meet its burden to show that his failure to cancel the Great-West policy "increased [Northwestern's] risk at the time of the loss." See

---

[4]A rescission based on a misrepresentation or breach of affirmative warranty is governed by § 631.11(1)(b), and a rescission based on a failure of condition or breach of promissory warranty is governed by § 631.11(3).

Wis. Stat. § 631.11(3). "The burden of proof on an insurance company seeking to rescind an insurance contract is . . . clear and convincing evidence as to each element of the statute." Pum v. Wis. Physicians Serv. Ins. Corp., 727 N.W.2d 346, 353 (Wis. Ct. App. 2006).

As an initial matter, the parties dispute what risk Northwestern insured against in its policy. Weiher asserts that the risk was that he "might become disabled and be unable to work in his occupation." He argues Northwestern has not shown that the failure to cancel the Great-West policy increased the risk that he would become disabled and unable to work. Northwestern concedes it has not shown that the existence of additional insurance actually increased the risk that Weiher would suffer a medical condition that would give rise to a disability. Instead, Northwestern contends the risk it insured against was that Weiher would seek and obtain disability benefits. Part of that, Northwestern agrees, was the risk that Weiher would suffer a medical condition that rendered him physically or mentally disabled. Another part, however, was the risk that he would make and perpetuate a disability claim. Northwestern argues that an over-insured individual is more likely to make and perpetuate a claim, thereby increasing its risk.

It is not necessary to resolve the parties' dispute concerning whether risk, as that term is used in § 631.11(3), includes over-insurance.[5] Even assuming Northwestern's risk included the risk of over-insurance, Northwestern failed to show it was undisputed that Weiher was over-insured *at the time of the loss*. See Wis. Stat, § 631.11(3). As support for its argument, Northwestern first relies on its Financial Underwriting Standards (Underwriting Standards). For example, Northwestern points to Section 626.1.1 of its Underwriting Standards, which provides:

---

[5]The statute does not define risk.

Financial underwriting is the evaluation of the financial aspects of an application to avoid over-insurance. The company is concerned about over-insurance because experience has shown that it leads to an increase in the number of claims and an increase in the length of claims. Specifically, when applying financial underwriting standards, an underwriter will evaluate four key variables: earned income, unearned income, net worth, and bankruptcy.

Northwestern further relies on its underwriting standard on Issue and Participation, which provides:

Northwestern Mutual Disability Insurance coverage is designed to replace a portion of the financial loss that occurs if an Insured becomes disabled and cannot work. An important aspect of disability underwriting is determining the appropriate portion of the financial loss to insure. It is desirable that the Insured have enough coverage to continue to provide necessities in the event of disability. It is undesirable to allow so much coverage that the Insured is better off, financially, after disability than before disability. Such a situation makes it tempting to even highly motivated people to continue receiving benefits rather than return to work. This is costly to the rest of our policy owners, and also impedes the recovery of the insured. In short, over insurance is not a healthy situation for any of our policy owners. To minimize the risk of over insurance, Northwestern Mutual limits the amount of coverage in which we will participate on any one life. Total coverage on any one life (including all outside coverage) will not normally be allowed to exceed Northwestern Mutual's published limits.

This evidence may support Northwestern's contention that it would not have issued the policy to Weiher had it known Weiher would not cancel the Great-West policy. But the question is not whether Northwestern would (or would not) have issued the policy had it known what it knows now. The question is whether, after the policy went into effect, the failure to cancel the policy increased the risk at the time of the loss, i.e., when Weiher became disabled and made a claim for benefits

in 2012.[6] Furthermore, § 631.11(3) speaks to a particular policy, and an insurer's ability to rescind that particular policy, not to general risks taken into consideration by underwriters as a whole in deciding whether to issue certain types of policies as described in these Underwriting Standards. See Wis. Stat. § 631.11(3) ("no breach of a promissory warranty constitutes grounds for rescission of . . . *an* insurance policy unless it exists at the time of the loss and either increases the risk at the time of the loss or contributes to the loss." (emphasis added)). General underwriting principles provide a helpful backdrop to explain the nature of a particular risk, but they do not conclusively answer the specific question at issue here.

Next, Northwestern presented the testimony of its Standards Compliance Consultant, Don Seebach. Seebach's statements likewise do not address whether Weiher was over-insured in 2012, thus resulting in an increased risk to Northwestern. In an affidavit, Seebach averred that Northwestern

> specifically relied on Dr. Weiher's representation that he would terminate his [Great-West] disability policy. His failure to do so increased the risk to Northwestern Mutual. Northwestern Mutual would not have issued a Disability Income Policy . . . had it known that Dr. Weiher would not terminate his [Great-West] Disability Policy.

Again, this testimony may be sufficient to show that Weiher's agreement to cancel the Great-West policy was material to Northwestern's decision to issue the policy. But rescission pursuant to § 631.11(3) does not turn on a finding of materiality. Cf. Wis. Stat. § 631.11(1)(b). And Seebach's simple and unsupported statement that Weiher's failure to cancel "increased the risk" is insufficient to meet Northwestern's burden on rescission as to this particular policy. See Pum, 727 N.W.2d at 353.

_____

[6]We respectfully disagree with the dissent's characterization of how we construe the phrase "increases the risk at the time of the loss." In fact, we see little, if any, difference between the dissent's view and our view of "the question" at issue. (Dissenting Opinion, infra, slip op. at 17.)

Northwestern also relies on Seebach's deposition testimony that Weiher's failure to cancel the Great-West policy increased the risk "from an underwriting standpoint," because "he had more coverage in force than we would allow." That increased the risk, according to Seebach, because the amount the person receives in disability benefits "would be possibly higher than what they could earn while in their occupation." However, when specifically asked whether he knew if that was the case with Weiher, Seebach conceded he did not know and was "just talking generalities." Seebach also admitted that he was not aware of any other way that Weiher's failure to cancel the Great-West policy might have increased Northwestern's risk.

Northwestern's evidence is insufficient to show that it is entitled to summary judgment because the evidence does not address the specific insurance policy at issue in this case. Even if a general aversion to "over-insurance," as described in the Underwriting Standards and testified to by Seebach, is sufficient to prove that Weiher's breach of his promise to cancel the Great-West policy "increase[d] the risk" to Northwestern, it does not address whether his breach "increase[d] the risk *at the time of the loss*." Weiher, on the other hand, offered evidence showing that, based on his income in 2012, he was not over-insured at the time of the loss. And even Northwestern's Disability Benefits Team Lead Consultant, Tricia Hoesly, testified that the policy did not prevent Weiher from cancelling the Great-West policy but then signing up for another disability policy from a different insurance company—which also would have provided him with additional disability coverage. Accordingly, based on the record before us, we conclude Northwestern was not entitled to summary judgment under § 631.11(3).

Northwestern alternatively asserts it is allowed to rescind the insurance contract pursuant to § 631.11(1)(b) because the failure to cancel the Great-West policy also can be construed as a "misrepresentation or breach of affirmative warranty" which under some circumstances can be proper grounds for rescission of

an insurance contract.  See Wis. Stat. § 631.11(1)(b).  Even if so construed, there appears to remain a factual dispute concerning whether Weiher "knew or should have known that the representation was false" or "was made with intent to deceive" Id.  Weiher claims he mistakenly failed to cancel the policy; Northwestern alleges otherwise.  Such factual disputes are usually questions for the jury.  Pum, 727 N.W.2d at 352.  In any event, the district court did not address this alternative ground, and we decline to do so for the first time on appeal.  See Loftness Specialized Farm Equip., Inc. v. Twiestmeyer, 742 F.3d 845, 851 (8th Cir. 2014) ("When it would be beneficial for the district court to consider an alternative argument in the first instance, we may remand the matter to the district court.").  The district court may consider on remand Northwestern's alternative ground for summary judgment. [7]

### III.  Conclusion

Accordingly, we reverse the decision of the district court to grant Northwestern summary judgment and remand for further proceedings.

LOKEN, Circuit Judge, dissenting.

I respectfully dissent.  Based upon the Wisconsin Supreme Court's controlling decision in Fox v. Catholic Knights Ins. Soc'y, 665 N.W.2d 181 (Wis. 2003), I conclude the majority has misinterpreted Wis. Stat. § 631.11(3), a statute that does not even apply to the issue whether Northwestern Mutual Life Insurance Company is entitled to rescind the disability insurance policy it issued to Douglas Weiher.

---

[7]We likewise decline to consider Weiher's argument that he is entitled to summary judgment on his breach of contract counterclaim.  Because the district court concluded Northwestern had properly rescinded the policy, it denied Weiher's motion for summary judgment.  We believe "it would be beneficial for the district court to consider this issue in the first instance."  Id.

## I.

In mid-2009, with his income from the practice of dentistry increasing, Weiher advised his independent insurance agent that he would like to increase the monthly disability benefits that would be provided by his two existing policies. One policy, with UNUM, would pay $5,000 per month if Weiher became totally disabled. The other, a Great-West Life policy sponsored by the American Dental Association, would pay $6,000 per month. The agent began negotiating with Northwestern, and Weiher eventually submitted to Northwestern tax returns and other information disclosing current annual earned income of $271,500 and the two existing disability policies. Northwestern advised that it was willing to issue a new policy offering disability benefits of $8,400 per month provided Weiher terminated the Great-West policy. Though Weiher preferred to retain the Great-West policy because he wanted total monthly benefits of $15,000, he signed an Amendment To Application stating:

> I agree to terminate the insurance listed below by the next premium due date. I understand Northwestern Mutual Life is relying on this agreement and would not have issued a policy without this agreement. If the coverage listed below is not terminated by the next premium due date, or is terminated and later reinstated, any policy issued as a result of this application may be rescinded and the premiums returned.

The Amendment listed a Great-West policy in the amount of $3,500 with a next premium due date of July 11, 2010. The Amendment was false when signed because the Great-West policy benefit was in fact $6,000 and the July 11 premium had already been paid. Weiher continued paying premiums on the Great-West policy and submitted a claim for disability benefits in 2012, which Great-West paid. Thus, while Weiher may not have defrauded Northwestern, he knowingly breached a contractual obligation that was a condition precedent to Northwestern issuing its policy.

## II.

It is undisputed that Northwestern's unwillingness to issue Weiher a policy providing a monthly disability benefit of $8,400 unless he terminated the Great-West policy was based upon financial underwriting standards that included coverage limits based on a percentage of earned income designed to avoid the risk of overinsurance. "Overinsurance" is an imprecise term with different meanings. In this context, as the Wisconsin Court of Appeals has noted:

> "overinsurance" refers to a situation where multiple coverages exist to a degree where the insured is tempted to trigger the insured event and thereby obtain the substantial coverage proceeds. An "overinsurance" clause prohibiting such excess coverage serves public policy by reducing the temptation of such fraud. *See Struebing v. American Ins. Co.*, 197 Wis. 487, 493-94, 222 N.W. 831, 834 (1929).

Becker v. State Farm Mut. Auto. Ins. Co., 512 N.W.2d 191, 193 (Wis. App. 1993). This type of overinsurance is a well-recognized risk to disability insurers:

> People who know that their full income will continue after they stop working may take more risks in their daily lives and will not try as hard to return to work after injury or illness; some insureds will fake the existence of a disability or exaggerate its severity. The closer the disability benefit to 100% of earned income, the greater the moral hazard.

Hall v. Life Ins. Co. of N. Am., 317 F.3d 773, 775 (7th Cir. 2003).

In Langlois v. Wis. Nat'l Life Ins. Co., 119 N.W.2d 400, 403 (Wis. 1963), the Wisconsin Supreme Court held that, if the insured misrepresented in a disability insurance policy application that his annual income was $8,500, when in fact it was less than $3,000, the misrepresentation "materially affected the [insurer's]

acceptance of this risk," which would defeat recovery under the policy even absent an intent to deceive the insurer. At that time, the applicable statute, § 209.06(1), provided that no representation or warranty "shall be deemed material or defeat or avoid the policy . . . unless the matter misrepresented or made a warranty increased the risk or contributed to the loss."

In 1975, as "part of a broad revision to the insurance laws," the Wisconsin Legislature enacted Wis. Stat. § 631.11 "to replace section 209.06 of the previous statutes and broaden it to expressly bring failures of condition within the statute." Fox, 665 N.W.2d at 191. Two provisions of the current § 631.11 are relevant here:

(1)(b) *Misrepresentation or breach of affirmative warranty.* No misrepresentation, and no breach of an affirmative warranty, that is made . . . in the negotiation for or procurement of an insurance contract constitutes grounds for rescission of, or affects the insurer's obligations under, the policy unless, if a misrepresentation, the person knew or should have known that the representation was false, and unless any of the following applies:
1. The insurer relies on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive.
2. The fact misrepresented or falsely warranted contributes to the loss.

(3) *Effect of failure of condition or breach of promissory warranty.* No failure of a condition prior to a loss and no breach of a promissory warranty constitutes grounds for rescission of, or affects an insurer's obligation under, an insurance policy unless it exists at the time of the loss and either increases the risk at the time of the loss or contributes to the loss.

## III.

In <u>Fox</u>, the insured applied for a life insurance policy and paid the initial premium. The application stated that coverage would not begin until a blood test was completed. The insured was killed in an auto accident before completing the blood test. The Wisconsin Court of Appeals held that § 631.11(3) trumped this condition precedent, and therefore the policy provided coverage because the insurer "could not prove that the failure to complete the blood draw and medical studies contributed to or increased the risk of loss." 665 N.W.2d at 186.

The Wisconsin Supreme Court unanimously reversed. First, examining the text of § 631.11(3), the Court concluded that it applies only to conditions subsequent and to promissory or continuing warranties, not to conditions precedent that "relate to the attachment of risk and precede the existence of the policy . . . . Insurers cannot show, under § 631.11(3), that the failure of such a condition [precedent] increased the risk at the time of the loss or contributed to the loss because risk has not yet attached." <u>Id.</u> at 188. Next, the Court thoroughly examined the legislative history of § 631.11, finding that its purpose was both to protect policyholders from "harsh common law doctrines" and to protect "the ability of insurance companies to get the information they need to underwrite policies." <u>Id.</u> at 192. One purpose of the statute was to protect insurers against "violations of conditions that would preclude acceptance of the risk." <u>Id.</u>, quoting Act of June 21, 1975, ch. 375, § 41, 1975 Wis. Sess. Laws 1150, 1169. "Were we to rule that interim insurance is automatically provided upon payment of a first premium," this purpose would be frustrated, the Court explained, because "potential insureds would have no incentive to fulfill requirements such as medical examinations which assist insurers with underwriting." <u>Id.</u>

After concluding that § 631.11(3) did not apply, the Court turned to whether the required blood test was a condition precedent to coverage:

-14-

> Whether a condition is a condition precedent to coverage depends on the language of the contract itself. If the proposed insured does not then get an examination required for coverage, there is no contract for insurance.

Id. at 192. Based on the contract in Fox, the Court concluded that "the conditional insurance agreement makes absolutely clear that coverage is not effective until the required medical examination has taken place." Id. at 193. "As a result, we must conclude that there was no insurance policy in effect at the time Patrick Fox died and that, therefore, Wis. Stat. § 631.11(3) does not apply." Id. at 194.

In my view, the decision in Fox applies equally to this case. The negotiations between Weiher and Northwestern, and in particular the above-quoted Amendment To Application, make clear, in the words of Fox, "that coverage is not effective until the required [termination of the Great-West policy] has taken place." Like the insured's promise to get a blood test in Fox, Weiher's promise to terminate the Great-West policy was a condition precedent, but it did not preclude the parties from putting the policy in place on a conditional basis. If viewed as a warranty, the promise was "that facts are as stated at the beginning of the policy period," not a promise "that facts will *continue* to be as stated throughout the policy period." Id. at 190 (emphasis in original, quoting Black's Law Dictionary). Note that the Court in Fox, having concluded that § 631.11(3) did not apply, did *not* turn to § 631.11(1)(b) to determine whether there was a misrepresentation or breach of affirmative warranty that affected the insurer's obligation. Rather, the Court held that there was no coverage because the conditional policy never came into existence. In effect, the Court ruled that § 631.11 simply does not apply to a condition precedent to the existence of a policy. At minimum, Fox established that breach of a condition precedent that defines insurability meets the reliance and materiality requirements of § 631.11(1)(b).

-15-

## IV.

For these reasons, the decision in Fox conclusively establishes that the district court properly granted summary judgment to Northwestern because Wis. Stat. § 631.11(3), the statute on which Weiher relied in opposing summary judgment, does not apply on the undisputed facts of this case.

In addition, if § 631.11(3) did apply in this case, I agree with the district court that the interpretation of that statute urged by Weiher, and now adopted by the majority, is "unpersuasive" because it depends upon a definition of "risk" that is "unreasonably narrow and unsupported." As the analysis in Fox makes clear, the "risk" referred to in § 631.11(3) includes both the risk of loss being insured *and* the financial risk to the insurer of providing coverage for the insured risk. The latter risk includes, as a matter of Wisconsin public policy, the "moral hazard" of overinsurance that creates a risk that the insured will be tempted to trigger the insured event and thereby obtain the substantial coverage proceeds. See Manzella v. Paul Revere Life Ins. Co., 872 F.2d 96, 99 (5th Cir. 1989) (disability insured's failure to disclose another policy "did not increase the risk that he would become disabled" but did "affect the acceptance of the risk" because "an overinsured person has a strong inducement not to return to work"). Weiher's promise to cancel the Great-West policy "materially affected [Northwestern's] acceptance of this risk." Langlois, 119 N.W.2d at 403. His breach of that material promise increased the risk by enlarging his monthly disability benefit beyond what Northwestern's financial underwriting standards allowed. That increased risk existed from the moment he submitted the false Amendment stating he would terminate the Great-West policy at the due date of a premium that had already been paid, until he filed claims for disability benefits with both Northwestern and Great-West in 2012.

The majority construes the phrase "increases the risk at the time of the loss" in § 631.11(3) as requiring proof that Northwestern would not have issued the policy

-16-

based on Weiher's greater income when he filed the claim for disability benefits in 2012. The district court properly concluded, consistent with the analysis of conditions precedent in <u>Fox</u>, "This change in [Weiher's] income is irrelevant. [He] created a binding contract in 2010, and even if his income increased, his disability benefits were nevertheless closer to his earned income than they otherwise should have been under the Policy." Thus, even if § 631.11(3) applies, the question is not whether Northwestern would have issued the same policy to Weiher in 2012 with the Great-West policy still in effect but whether Weiher's failure to cancel the Great-West policy increased Northwestern's risk in 2012.

In 2012, Weiher had many proper ways to seek an increase of his disability benefits based on his greater income -- he could terminate the Great-West policy and apply to Northwestern for increased benefits under the policy here at issue or a second policy; or he could keep the Great-West policy, terminate the Northwestern policy, and apply to Great West, Northwestern, or another insurer for increased disability benefits based upon his earned income in 2012. Instead, he chose to continue breaching his contractual commitment to Northwestern, thereby failing to satisfy a condition precedent to coverage that, under <u>Fox</u>, prevented that coverage from coming into existence. Fortunately, the majority opinion does not preclude the district court from correctly applying Wisconsin law as established in <u>Fox</u> on remand. Rather than impose additional work on the district court, I would affirm its correct grant of summary judgment rejecting Weiher's claim for disability benefits.

_____