LOKEN, Circuit Judge,
dissenting.
I respectfully dissent. Based upon the Wisconsin Supreme Court’s controlling decision in Fox v. Catholic Knights Ins. Soc’y, 263 Wis.2d 207, 665 N.W.2d 181 (2003), I conclude the majority has misinterpreted Wis. Stat. § 631.11(3), a statute that does not even apply to the issue whether Northwestern Mutual Life Insurance Company is entitled to rescind the disability insurance policy it issued to Douglas Weiher.
*401 I.
In mid-2009, with his income from the practice of dentistry increasing, Weiher advised his independent insurance agent that he would like to increase the monthly disability benefits that would be provided by his two existing policies. One policy, with UNUM, would pay $5,000 per month if Weiher became totally disabled. The other, a Great-West Life policy sponsored by the American Dental Association, would pay $6,000 per month. The agent began negotiating with Northwestern, and Wei-her eventually submitted to Northwestern tax returns and other information disclosing current, annual earned income of $271,500 and the two existing disability policies. Northwestern advised that it was willing to issue a new policy offering disability benefits of $8,400 per month provided Weiher terminated the Great-West policy. Though Weiher preferred to retain the Great-West policy because he wanted total monthly benefits of $15,000, he signed an Amendment To Application stating:
I agree to terminate the insurance listed below by the next premium due date. I understand Northwestern Mutual Life is relying on this agreement and would not have issued a policy without this agreement. If the coverage listed below is not terminated by the next premium due date, or is terminated and later reinstated, any policy issued as a result of this application may be rescinded and the premiums returned.
The Amendment listed a Great-West policy in the amount of $3,500 with a next premium due date of July 11, 2010. The Amendment was false when signed because the Great-West policy benefit was in fact $6,000 and the July 11 premium had already been paid. Weiher continued paying premiums on the Great-West policy and submitted a claim for disability benefits in 2012, which Great-West paid. Thus, while Weiher may not have defrauded Northwestern, he knowingly breached a contractual obligation that was a condition precedent to Northwestern issuing its policy.
II.
It is undisputed that Northwestern’s unwillingness to issue Weiher a policy providing a monthly disability benefit of $8,400 unless he terminated the Greah-West policy was based upon financial underwriting standards that included coverage limits based on a percentage of earned income designed to avoid the risk of overinsu-rance. “Overinsurance” is an imprecise term with different meanings. In this context, as the Wisconsin Court of Appeals has noted:
“overinsurance” refers to a situation where multiple coverages exist to a degree where the insured is tempted to trigger the insured event and thereby obtain the substantial coverage proceeds. An “overinsurance” clause prohibiting such excess coverage serves public policy by reducing the temptation of such fraud. See Struebing v. American Ins. Co., 197 Wis. 487, 493-94, 222 N.W. 831, 834 (1929).
Becker v. State Farm Mut. Auto. Ins. Co., 181 Wis.2d 704, 512 N.W.2d 191, 193 (App.1993). This type of overinsurance is a well-recognized risk to disability insurers:
People who know that their full income will continue after they stop working may take more risks in their daily lives and will not try as hard to return to work after injury or illness; some insureds will fake the existence of a disability or exaggerate its severity. The closer the disability benefit to 100% of earned income, the greater the moral hazard.
Hall v. Life Ins. Co. of N. Am., 317 F.3d 773, 775 (7th Cir.2003).
*402 In Langlois v. Wis. Nat’l Life Ins. Co., 19 Wis.2d 151, 119 N.W.2d 400, 403 (1963), the Wisconsin Supreme Court held that, if the insured misrepresented in a disability insurance policy application that his annual income was $8,500, when in fact it was less than $3,000, the misrepresentation “materially affected the [insurer’s] acceptance of this risk,” which would defeat recovery under the policy even absent an intent to deceive the insurer. At that time, the applicable statute, § 209.06(1), provided that no representation or warranty “shall be deemed material or defeat or avoid the policy ... unless the matter misrepresented or made a warranty increased the risk or contributed to the loss.”
In 1975, as “part of a broad revision to the insurance laws,” the Wisconsin Legislature enacted Wis. Stat. § 631.11 “to replace section 209.06 of the previous statutes and broaden it to expressly bring failures of condition within the statute.” Fox, 665 N.W.2d at 191. Two provisions of the current § 631.11 are relevant here:
(l)(b) Misrepresentation or breach of affirmative warranty. No misrepresentation, and no breach of an affirmative warranty, that is made ... in the negotiation for or procurement of an insurance contract constitutes grounds for rescission of, or affects the insurer’s obligations under, the policy unless, if a misrepresentation, the person knew or should have known that the representation was false, and unless any of the following applies:
1. The insurer relies on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive.
2. The fact misrepresented or falsely warranted contributes to the loss.
(3) Effect of failure of condition or breach of promissory warranty. No failure of a condition prior to a loss and no breach of a promissory warranty constitutes grounds for rescission of, or affects an insurer’s obligation under, an insurance policy unless it exists at the time of the loss and either increases the risk at the time of the loss or contributes to the loss.
III.
In Fox, the insured applied for a life insurance policy and paid the initial premium. The application stated that coverage would not begin until a blood test was completed. The insured was killed in an auto accident before completing the blood test. The Wisconsin Court of Appeals held that § 631.11(3) trumped this condition precedent, and therefore the policy provided coverage because the insurer “could not prove that the failure to complete the blood draw and medical studies contributed to or increased the risk of loss.” 665 N.W.2d at 186.
The Wisconsin Supreme Court unanimously reversed. First, examining the text of § 631.11(3), the Court concluded that it applies only to conditions subsequent and to promissory or continuing warranties, not to conditions precedent that “relate to the attachment of risk and precede the existence of the policy.... Insurers cannot show, under § 631.11(3), that the failure of such a condition [precedent] increased the risk at the time of the loss or contributed to the loss because risk has not yet attached.” Id. at 188. Next, the Court thoroughly examined the legislative history of § 631.11, finding that its purpose was both to protect policyholders from “harsh common law doctrines” and to protect “the ability of insurance companies to get the information they need to underwrite policies.” Id. at 192. One purpose of the statute was to protect insurers against “violations of conditions that would *403 preclude acceptance of the risk.” Id., quoting Act of June 21, 1975, ch. 375, § 41, 1975 Wis. Sess. Laws 1150, 1169. “Were we to rule that interim insurance is automatically provided upon payment of a first "premium,” this purpose would be frustrated, the Court explained, because “potential insureds would have no incentive to fulfill requirements such as medical examinations which assist insurers with underwriting.” Id.
After concluding that § 631.11(3) did not apply; the Court turned to whether the required blood test was a condition precedent to coverage:
Whether a condition is' a condition precedent to coverage depends on the language of the contract itself. If the proposed insured does not then get an examination required for coverage, there is no contract for insurance.
Id. at 192. Based on the contract in Fox, the Court concluded that “the conditional insurance agreement makes absolutely clear that coverage is not effective until the required medical examination has taken place.” Id. at 193. “As a result, we must conclude that there was no insurance policy in effect at the time Patrick Fox died and that, therefore, Wis. Stat. § 631.11(3) does not apply.” Id. at 194.
In my view, the decision in Fox applies equally to this case. The negotiations between Weiher and Northwestern, and in particular the above-quoted Amendment To Application, make clear, in the words of Fox, “that coverage is not effective until the required [termination of the Great-West policy] has taken place.” Like the insured’s promise to get a blood test in Fox, Weiher’s promise to terminate the Great-West policy was a condition precedent, but it did not preclude the parties from putting the policy in place on a conditional basis. If viewed as a warranty, the promise was “that facts are as stated at the beginning of the policy period,” not a promise “that facts will continue to be as stated throughout the policy period.” Id. at 190 (emphasis in original, quoting Black’s Law Dictionary). Note that the Court in Fox, having concluded that § 631.11(3) did not apply, did not turn to § 631.11(1)(b) to determine whether there was a misrepresentation or breach of affirmative warranty that affected the insurer’s obligation. Rather, the Court held that there was no coverage because the conditional policy never came into existence. In effect, the Court ruled that § 631.11 simply does not apply to a condition precedent to the existence of a policy. At minimum, Fox established that breach of a condition precedent that defines insurability meets the reliance and materiality requirements of § 631.11(1)(b).
IV.
For these reasons, the decision in Fox conclusively establishes that the district court properly granted summary judgment to Northwestern because Wis. Stat. § 631.11(3), the statute on which Weiher relied in opposing summary judgment, does not apply on the undisputed facts of this case.
In addition, if § 631.11(3) did apply in this case, I agree with the district court that the interpretation of that statute urged by Weiher, and now adopted by the majority, is “unpersuasive” because it depends upon a definition of “risk” that is “unreasonably narrow and unsupported.” As the analysis in Fox makes clear, the “risk” referred to in § 631.11(3) includes both the risk of loss being insured and the financial risk to the insurer of providing coverage for the insured risk. The latter risk includes, as a matter of Wisconsin public policy, the “moral hazard” of overinsurance that creates a risk that the insured will be tempted to trigger the in *404 sured event and thereby obtain the substantial coverage proceeds. See Manzella v. Paul Revere Life Ins. Co., 872 F.2d 96, 99 (5th Cir.1989) (disability insured’s failure to disclose another policy “did not increase the risk that he would become disabled” but did “affect the acceptance of the risk” because “an overinsured person has a strong inducement not to return to work”). Weiher’s promise to cancel the Great-West policy “materially affected [Northwestern’s] acceptance of this risk.” Langlois, 119 N.W.2d at 403. His breach of that material promise increased the risk by enlarging his monthly disability benefit beyond what Northwestern’s financial underwriting standards allowed. That increased risk existed from the moment he submitted the false Amendment stating he would terminate the Greab-West policy at the due date of a premium that had already been paid, until he filed claims for disability benefits with both Northwestern and Greab-West in 2012.
The majority construes the phrase “increases the risk at the time of the loss” in § 631.11(3) as requiring proof that Northwestern would not have issued the policy based on Weiher’s greater income when he filed the claim for disability benefits in 2012. The district court properly concluded, consistent with the analysis of conditions precedent in Fox, “This change in [Weiher’s] income is irrelevant. [He] created a binding contract in 2010, and even if his income increased, his disability benefits were nevertheless closer to his earned income than they otherwise should have been under the Policy.” Thus, even if § 631.11(3) applies, the question is not whether Northwestern would have issued the same policy to Weiher in 2012 with the Greab-West policy still in effect but whether Weiher’s failure to cancel the Great-West policy increased Northwestern’s risk in 2012.
In 2012, Weiher had many proper ways to seek an increase of his disability benefits based on his greater income — he could terminate the Greab-West policy and apply to Northwestern for increased benefits under the policy here at issue or a second policy; or he could keep the Greab-West policy, terminate the Northwestern policy, and apply to Great West, Northwestern, or another insurer for increased disability benefits based upon his earned income in 2012. Instead, he chose to continue breaching his contractual commitment to Northwestern, thereby failing to satisfy a condition precedent to coverage that, under Fox, prevented that coverage from coming into existence.- Fortunately, the majority opinion does not preclude the district court from correctly applying Wisconsin law as established in Fox on remand. Rather than impose additional work on the district court, I would affirm its correct grant of summary judgment rejecting Wei-her’s claim for disability benefits.